JUNGST et al. v. BALDRIDGE, Governor of Idaho, et al.

No. 1403.

District Court, D. Idaho, S. D.

Aug. 28, 1929.

Turner K. Hackman, of Twin Falls, Idaho, for plaintiff.

W. D. Gillis, Atty. Gen. of Idaho, and Fred J. Bacock, Asst. Atty. Gen., for defendant.

Before DIETRICH, Circuit Judge, and NETERER and CAVANAH, District Judges.

DIETRICH, Circuit Judge.

The plaintiffs are engaged in the business of butchering and dealing in meats at Twin Falls and other points in Idaho. The business, they allege, is purely intrastate, and does not come within the provisions of the act of Congress known as The Packers and Stockyards Act of 1921 (7 USCA §§ 181–229). By their complaint they challenge the validity of an act passed by the Idaho Legislature, approved March 11, 1929 (Laws 1929, c. 148), regulatory of the business of butchers and dealers in meats, particularly the meats of cattle, sheep, and horses.

Clearly it is to be regarded as a police and not a revenue measure, and is doubtless intended to aid in the prevention and detection of the theft of such live stock. It declares (section 1) that every person who at a fixed place of business slaughters meat animals, or deals in or sells the meat or by-products of such animals, shall be deemed a "butcher" for the purpose of the act, and for like purposes any one who at a fixed place of business sells or exchanges or otherwise deals in such meat products shall be deemed a "meat dealer." There is also a definition of the meaning of the term "meat peddler," and horses, cattle, and sheep are designated as "meat animals."

The act (section 2) provides that, before any person shall engage in the business of butchering or of dealing in fresh meats, he shall register his name with the county recorder of the county where such business is to be conducted and declare his intention to engage therein, and pay the recorder a filing fee of fifty cents. And such filing with payment of fee must be renewed annually. Every meat dealer must also file with the probate judge of the county where the business is to be conducted a bond of not less than $100 or more than $1,000, within the discretion of such judge, conditioned that the principal will comply with the requirements of the act.

It is also provided (section 3) that, within forty-eight hours after slaughtering any animal, and before offering the meat for sale, "every butcher or meat dealer or meat peddler who slaughters any meat animal or animals, or who sells or otherwise exchanges or distributes the meat thereof to any butcher, meat dealer, or meat peddler shall have the carcass or carcasses of such animal or animals and the hide or hides thereof" inspected "by a sheriff, deputy sheriff, constable, brand inspector, or deputy brand inspector, in the county in which such animal * * * was slaughtered," and pay a fee of fifty cents for the inspection of the "hide and carcass of each bovine animal" and ten cents for each sheep. He must present to the officer for inspection both the carcass and the hide in its entirety with the ears attached. The officer is to mark the hide "by making a hole at least one inch square in either front leg," and also with a stamp to be provided by the county he must indelibly stamp the flesh side of the hide. And he must place an identical stamp upon each quarter of the carcass. The inspecting officer thereupon issues to the dealer or butcher a certificate of inspection, containing certain data, a copy of which is to be forwarded to the sheriff, who must keep it on file in his office for a period of three years. Every meat dealer is further required to keep a book in which he shall truly enter a record of all animals slaughtered by him, or carcasses or quarters purchased, which record shall disclose the marks and brands on the animals slaughtered by him and the stamps upon the quarters purchased, the weight thereof, when and from whom purchased, and the date of slaughter. The record is to be kept for three years, and shall be open to the public for inspection. Section 5. It is also made unlawful for any dealer to purchase or take possession of a carcass or any quarter thereof, unless it bears the inspector's stamp. Section 6.

That reasonable means for the prevention and detection of the theft of live stock, particularly in a country where they commonly run on the open range, are within the police powers of the state, is too clear to admit of discussion. Nor do we think there is anything unreasonable in the act under consideration. The registration is a simple matter, the requisite bond is not excessive, and the record to be kept by the dealer entails but little labor. The registration and inspection fees would seem to be moderate in amount; certainly we cannot hold that they bear no reasonable relation to the services for which they are paid. That proximately the burden falls upon the butchering and meat industry constitutes no valid objection. True, the measure is primarily intended for the protection of stock growers, but it may be said of most measures for regulation, inspection, or supervision in respect of any branch of business that it is for the benefit of the public, and yet the burden of administering such laws is quite universally imposed in the first instance upon the business affected thereby. It becomes one of the expenses of carrying on the business, and is passed to the public. So here, while the butchers and the dealers in the first instance pay the charges, presumably in the long run they will pay so much less for the live stock they purchase, thus shifting the burden to the growers, or will sell their products at a higher price, thus recouping the expense from the public. Besides, it is to be borne in mind that in the industry itself there may be dishonest persons who willfully or carelessly buy stolen stock, and the burden imposed could be justified upon that ground alone.

It is further urged that purchasers and dealers may suffer loss through delay in procuring inspection. But all inspection laws would seem to be equally subject to such an objection. It assumes that the inspecting officers will be derelict in the discharge of their duty to act promptly, but this we cannot presume. And we think the kindred suggestion that an inspection officer may not always be available is fanciful. As we have seen, the inspection may be made by a sheriff, one of his deputies, a constable, a brand inspector, or a deputy brand inspector. Generally, the county commissioners of the county have authority to authorize the appointment of as many deputy sheriffs as may be needed, and by section 1939 of the Com-

piled Statutes (1919) in each county they are directed to appoint a brand inspector, who in turn is authorized to appoint such deputies "as may be necessary or convenient." That no one of such officers would be available at any time is an extremely remote possibility.

In the brief for plaintiffs are to be found copious extracts from decisions upon fundamental constitutional principles, such as that private property cannot be taken without due compensation, that all citizens are entitled to the equal protection of the law, and other general limitations upon legislative power; but, if we have correctly analyzed the act, it contravenes none of these great principles, and is well within the range of commonly exercised police power. The act is not novel or exceptional. See Territory ex rel. Live Stock Sanitary Board v. Kenney, 11 Ariz. 353, 95 P. 93; Limburger v. Barker, 17 Tex. Civ. App. 602, 43 S. W. 616; chapter 92, Comp. Laws Colo. 1921 (sections 4756–4764); 3 Corp. Jur. p. 188. And in principle its validity is thought to be supported by the Slaughter House Cases, 83 U. S. (16 Wall.) 36, 21 L. Ed. 394; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Armour & Co. v. N. Dakota, 240 U. S. 510, 36 S. Ct. 440, 60 L. Ed. 771, Ann. Cas. 1916D, 548; Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034, Ann. Cas. 1917C, 522.

Just how the principle of "equal protection" is supposed to be infringed plaintiffs do not clearly explain. That the business of butchering and dealing in meats constitutes a distinct industry reasonably susceptible to separate classification from other industries would seem to be too clear for discussion. For like reasons we do not need to discuss the exemption from the operation of the act of cases where the owner slaughters an animal, not for sale, but for his own use, or those who deal only in "such by-products of meat animals as pickled, cured, dried, or smoked meats." Manifestly the mischief against which the regulations are directed is in such cases negligible. The act further exempts from its operation such business of butchering and slaughtering as "comes within the provisions of that certain Act of Congress known and cited as the 'Packers and Stockyards Act of 1921.'" Section 9. 7 US CA §§ 181–229; Stafford v. Wallace, 258 U. S. 497, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229. In general, it may be said this act has to do with the regulation of stockyards and the slaughtering of live stock

and dealing in meat products when such activities have direct relation to interstate commerce. Upon an inspection it will appear that its provisions are, to say the least, quite as onerous upon the class affected thereby as are the requirements of the act here in question upon the class to which it relates; and the classification, we have no doubt, is reasonable.

Accordingly, the application for an interlocutory injunction will be denied, and the complaint will be dismissed with prejudice; costs to defendants.