No. 16,517.

TRUJILLO v. THE PEOPLE.
(222 P. [2d] 775)

Decided September 18, 1950.

438

Mr. ROMILLY FOOTE, for plaintiff in error.

Mr. JOHN W. METZGER, Attorney General, Mr. RAYMOND B. DANKS, Assistant, for the people.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

DEFENDANT, who is plaintiff in error here, was convicted under section 1, chapter 83, '35 C.S.A., of wilfully, unlawfully and feloniously neglecting, failing and refusing to provide reasonable support and maintenance for his illegitimate child. The verdict of the jury included a finding that defendant was the father of the minor child, Anthony Trujillo. He thereupon was sentenced by the court to the state penitentiary, to be confined therein at hard labor for a period of not less than nine months and not more than one year. He comes here seeking reversal and files fifteen assignments of error, which his counsel consolidates and groups under the following main headings: 1. That the evidence was insufficient; 2. That the trial court ruled improperly in seven respects, hereinafter to be discussed.

1. The evdence disclosed that the prosecuting witness, hereinafter designated as complainant, the mother of the illegitimate child, had known defendant about three

years. She was unmarried and twenty-four years of age at the time of the child's birth on December 1, 1948. Both defendant and complainant were born in Gardner, Colorado; the defendant, however, was a resident of Pueblo, while complainant has been a resident of Gardner. In January 1948 complainant visited her cousin in Pueblo, and while there defendant frequently saw her. According to her testimony, they first had intimate relations in February 1948, at the West Hotel in Pueblo. They discussed marriage and looked for an apartment, and in both the months of March and April again stayed together overnight at the West Hotel. The guest register of that hotel showed that a Mr. and Mrs. Trujillo of Pueblo registered there February 27, 1948; a Mr. and Mrs. Trujillo of Walsenburg registered there March 19, 1948, and also on April 9, 1948. Defendant admitted that he had registered at the West Hotel on the above mentioned dates, but claimed that the woman with him was the one he subsequently married in June 1949, and not complainant. He admitted having had intimate relations with complainant on one occasion, in January 1948, prior to the three dates fixed by her. Complainant further testified that, after the middle of April, she stayed with her parents in Gardner and that defendant frequently visited her there until shortly before the child was born, and that he acknowledged that he was the father of the child. Two letters from defendant, written during the pregnancy of complainant, do not conflict with the theory of the prosecution. One letter indicates that he was aware of the pregnancy. The first time defendant denied he was the father of the child was two weeks after its birth. The main defense was that complainant had been promiscuous with a number of men during the time that conception could have occurred. Complainant denied specifically that she had had relations with any of the men with whom defendant accused her of having consorted.

We do not agree with the reasons urged by de-

fendant why the judgment of the trial court should be set aside. The court expressed no dissatisfaction with the verdict of the jury, as occurred in *Piel v. People,* 52 Colo. 1, 119 Pac. 687. It is true that the evidence given by defendant's witnesses conflicted with that advanced by the prosecution, but there was competent evidence to support the verdict; and the evidence introduced by the people was not in itself inconsistent and conflicting, as was the case in *Bachman v. People,* 8 Colo. 472, 9 Pac. 42. As we have recently said in *St. Louis v. People,* 120 Colo. 345, 209 P. (2d) 538: "We have repeatedly held that where there is competent evidence to support the verdict of the jury, that the weight thereof, and credibility of the witnesses are questions exclusively for the jury's determination."

(a) The first objection to a ruling of the court was made to the admission in evidence of the register of the hotel where complainant testified she and defendant had stayed overnight on the three occasions hereinbefore mentioned. The register was identified by William Cole, who testified that his wife was the owner of the West Hotel; that he was not personally interested in the hotel, but that the register books were in his custody; that after a register book was filled, it was placed in the files to which he and his wife had keys. He further testified that Exhibit D, showing the three entries above mentioned concerning Mr. and Mrs. Trujillo, was such a book. When the district attorney attempted to bring out the three dates when defendant was registered at the hotel, objection to the testimony of William Cole was interposed on the following grounds: that "He doesn't make them; he doesn't see them made. Anyone could come in there, people frequently do, and sign someone else's name where they go to hotels. And unless he saw it, knows they were made of his own knowledge, it is not admissible." It also was objected that the entries would not identify themselves with the defendant, except by name. Counsel for the defense cites section 3,

chapter 177, '35 C.S.A., in support of his position, that this evidence should not have been admitted. That section, however, pertains in civil actions to the admission in evidence of book accounts where claim or defense is founded on such account. Here complainant had testified to three occasions when defendant registered for himself and her, and the book was offered in corroboration of that testimony. Complainant already had testified that she was present when defendant registered on the three occasions. Both she and defendant later identified the register book, and not only that but complainant identified the three signatures of defendant; and defendant himself, on direct examination, also acknowledged the three signatures to be his. It was at this point that he asserted he was at the hotel on those three occasions with a woman who subsequently became his wife. We have hitherto approved the admission of such evidence under similar circumstances. *Thorp v. People,* 110 Colo. 7, 129 P. (2d) 296.

2. (b) Error also is alleged in the court's allowing the complainant to reaffirm that her sex relations had been confined to defendant. On cross-examination she was asked if she had not had intercourse with some five or six different men named by defense counsel. She denied that she had. After the people had rested, the testimony of the first four defense witnesses went to the alleged promiscuity of the complainant—two of them claimed to have been eye-witnesses where another man, deceased at the time of the trial, was alleged to have been intimate; another claimed that he himself had had relations with her; and the fourth testified that he had seen complainant go out with some men working on a bridge gang. On rebuttal complainant was recalled and denied, over defense counsel's objection, the details brought out by the four defense witnesses. The court permitted the questions to be answered. Among the facts brought out by the complainant was that there was no bridge gang working there at any time during the

months of February, March and May, 1948, as stated by defense witnesses; that the only bridge gang in Gardner had been in November and December, 1947. Her testimoney, therefore, was not entirely repetitious, and we believe that no prejudicial error occurred in permitting it to be introduced. We especially arrive at this conclusion when it appears that on sur-rebuttal counsel for the defense recalled some witnesses and indulged in the same questioning which he now claims was error for the people to do. We do not believe the trial court abused its discretion in admitting this evidence. *Phenneger v. People*, 85 Colo. 442, 276 Pac. 983.

2. (c) Error is urged in the trial court's refusal to give defendant's tendered Instruction No. 1, reading as follows: "It is incumbent upon the state to prove, by the preponderance of the evidence that defendant wilfully, failed and refused to provide reasonable support and maintenance for said minor child. You are further instructed that wilful neglect must have occurred, while defendant knew, or ought to have known that said need existed." Such an instruction would have been unfair to defendant in relieving the prosecution of the burden of proving its case beyond a reasonable doubt and permitting it, as in civil cases, to prove it simply by a preponderance of the evidence. The instruction was properly rejected, therefore, as not being correct as a matter of law. *Haddock v. People*, 117 Colo. 416, 188 P. (2d) 891. Furthermore, it was not necessary to prove that the child is in need of support. *Poole v. People*, 24 Colo. 510, 52 Pac. 1025, 65 Am. St. Rep. 245. Nor did the rejected Instruction No. 1. state the theory of the defense, which was that defendant was not the father of the child. That theory was covered by Instruction No. 6.

2. (d) Error is further urged in permitting Dr. J. R. Knight to testify as the people's witness when his name was endorsed on the information as Dr. J. L. Knight. From a reading of the record it would appear that the copy of the information served on defendant's

counsel gives the witness' name as Dr. J. R. Knight; likewise the copy in the hands of the district attorney shows the name to be J. R. Knight, and that the witness was subpoened as J. R. Knight. Only on the original information did his initials appear as "J. L.", and representatives of the district attorney's office explained that the discrepancy was a clerical error in copying the name. No contention is made that defendant or his counsel was taken by surprise, or that the error made any further defense preparation necessary. Under these circumstances there would appear to be no valid reason for withholding Dr. Knight's testimony. *Wilson v. People,* 3 Colo. 325.

■■ 2. (e) It is claimed that error was committed in permitting the introduction of testimony concerning the birth certificate of the child. Complainant identified people's Exhibit C as a certified copy of the record of her child's birth, obtained by her from the registrar of vital statistics for Huerfano county. It is to be noted that this exhibit was not received in evidence. It was, however, shown to Dr. J. R. Knight, who attended complainant during her confinement, by way of refreshing his memory as to the name given to the child. The birth certificate listed Martin Trujillo as the father, and Anthony William Trujillo as the name of the child. Dr. Knight was not questioned concerning the name of the father—he was merely asked the child's name and, after looking at Exhibit C, testified: "Well, I feel, or I think now since I begin to think back on the matter, that this was the full name I was given at that time. I think you will find it in the original." His testimony concerning the name of the child merely substantiates the name set out in the information and upon which the jury was instructed. Counsel for the defense cite section 128, chapter 78, '35 C.S.A., which provides that the state registrar of vital statistics, upon request, furnish a certified copy of the record of any birth, and that this shall be prima facie evidence of the facts stated therein. Section 107

of the same chapter provides that a local registrar shall be appointed by the state registrar and shall be under his supervision. We believe the Attorney General's contention, that: "Logically, it would appear that a birth certificate, certified by the local registrar, would be as dependable as one certified by the state registrar, since it is the former who furnishes the information to the latter," is sound. In *Manship v. People,* 99 Colo. 1, 58 P. (2d) 1215, our court held that a properly certified copy of a birth record is admissible in evidence in a criminal case. We conclude that the contention of defense counsel on this point is not tenable.

2. (f) It further is contended that the trial court erred in refusing to admit in evidence defendant's Exhibit 1. This exhibit was a letter written by complainant before the trial of the case to one Ray Ortivez, after she had learned that he might testify as a witness for defendant. Defense counsel asked her if she had not threatened Ray Ortivez when she learned of his intentions. She denied that she had done so, and then counsel handed her the letter which was offered in evidence on the ground of "endeavoring to prevent witnesses from testifying." The deputy district attorney, after reading the letter, stated that he had no objection to its admission. The court, after excluding the jury, considered the offer and on its own motion ruled the letter inadmissible. It was stated in the letter that complainant had heard he was going to testify in the case. It was further stated that he had nothing to do with the affair, and that if he claimed he did he would be lying; that he was named by another unmarried girl as the father of her baby and so he himself might be looking for witnesses to testify falsely. We believe that the effect of the whole letter was to entreat Ortivez to tell the truth, if he did testify. We do not believe that the court's action was prejudicial to the rights of defendant.

2. (g) It finally is urged that the court erred in refusing to allow defense witnesses to answer certain

questions purportedly bearing on the credibility of one Sanders, a witness for the people. Sanders had testified that he had been acquainted with defendant for a number of years; that in Walsenburg, in April, 1949, defendant asked him to testify that he, Sanders, had had relations with complainant. Sanders also stated that in the succeeding month of May, at Farisita, defendant again offered to pay him to testify against complainant. On sur-rebuttal, defendant denied that he had been in Walsenburg on the occasion mentioned by Sanders, and that a month later, at Farisita, although admitting that he had seen Sanders, that he had tried to purchase his testimony. The court then sustained an objection by the people to the following question: "What was Tunney Sanders' condition as to being drunk or sober?" On neither direct examination nor cross-examination had the question of the sobriety of Sanders been raised. When the question was asked, counsel failed to state to the court the purpose of the question; but in any event, defense counsel obtained his objective through the testimony of Ray Ortivez who, also being recalled on sur-rebuttal and being asked the question concerning Sanders' condition as to his being drunk or sober, answered: "Well, he was drunk. Q. He was intoxicated? A. Yes." We do not believe that the fact that defendant's counsel was not permitted to present cumulative testimony on this point can be a basis for reversal, especially when the testimony excluded was that of defendant whose story in other respects the jury does not appear to have believed. Nor can the ruling of the trial court, excluding the testimony of Ray Ortivez to the following question, "State whether or not you heard Martin Trujillo try to bribe Tunney Sanders to testify in his favor and against (the complaining witness)," be held reversible error. No one had testified that Ortivez was present when Trujillo talked to Sanders about testifying in this trial.

The record does not show that defendant, after

rendition of the verdict, tried to furnish the performance bond for which provision is made in section 1, chapter 83, '35 C.S.A.; nor is there any reference in the assignments of error to an attempt to have such a bond issued. That question, therefore, is not before us.

We do not consider other alleged errors discussed in the briefs for the reason that they are not covered by the assignments of error, nor urged in the motion for a new trial.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD not participating.