No. 16,634.

EACHUS *v.* THE PEOPLE.
(238 P. [2d] 885)

Decided November 19, 1951. Rehearing denied December 10, 1951.

Messrs. Moynihan-Hughes-Sherman, Mr. Elam B. Underhill, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy Attorney General, Mr. Norman H. Comstock, Assistant Attorney General, for the people.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

Plaintiff in error, to whom we will herein refer as defendant, was convicted upon an information charging that he and one Mow on or about the 11th day of Jan-

uary, A.D. 1950, "not being a butcher, who has filed a bond as provided by law having a permanent place of business, did then and there unlawfully sell to one Edward D. Miller a portion of a carcass of beef, to wit: One-quarter of beef, without first exhibiting the hide intact of the same, and exposing the brand upon the hide, if any, to the purchaser, and did then and there unlawfully fail, neglect and refuse to preserve the hide of the said beef for a period of thirty days, and to exhibit the same upon the demand of Lawrence Gant, contrary to the form of the statute * * *." The statute in question is section 7, chapter 28, '35 C.S.A., hereinafter set forth.

It is not denied that on or about the date alleged in the information defendant and Mow did deliver one-quarter of beef to Miller; that the hide of said animal was not exhibited to Miller; that defendant was the seller of said quarter of beef; and that he received pay from Miller for the same. During the early course of the trial it developed that Mow had no interest in the beef sold to Miller; that he was merely assisting defendant in making delivery thereof; and thereupon, counsel representing Mow so moving, dismissal of the charge as to him was ordered by the court. Other facts necessary to be related may better be discussed in connection with the several assignments of error to be herein considered.

Defendant presents twelve separate assignments of error, all of which will fall into one of the following classifications: (1) Violation of constitutional provisions; (2) improper admission of evidence; (3) relating to instructions of the jury; and (4) insufficiency of evidence.

I.

Most strongly urged on the part of the defendant is his attack charging in substance that the statute upon which the information is based is void in that it deprives persons of liberty and property without due process of law, contrary to provisions of the federal and state Constitutions, and that it likewise compels a defendant charged thereunder to be a witness against himself in

violation of constitutional provisions. Strangely enough, and notwithstanding the considerable period of time that this statute has been in existence in the State of Colorado, it has not heretofore been construed by our court. We quite agree with the position of counsel for defendant that this statute is in the nature of a police regulation; that it was adopted by the legislature in behalf of the livestock industry of Colorado, and is designed to assist in the prevention of larceny of livestock.

Before entering into detailed discussion as to the particular statute now before us, as background and in the belief that it may be helpful, we indulge one or two general observations.

■■ First, that it is the well-defined policy of the law, many times repeated, that every reasonable presumption favors the validity of a statute and, that where attacked on constitutional grounds, the courts will uphold it unless it is clearly shown to be unconstitutional. The burden of proof is upon the assailant, and he must establish clearly and beyond reasonable doubt that the legislative enactment cannot be supported by any reasonable intendment or allowable presumption. Decisions so holding are legion, but we confine citations to only a few of the several Colorado cases, beginning with *Consumers' League v. Colorado & Southern Ry. Co.*, 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914 A 1158, wherein at page 58 we said:

"The presumption is that every statute is valid and constitutional, and such presumption is to be overcome only by clear demonstration. In case of doubt every possible presumption and intendment should be made in favor of the constitutionality of the act, and it is to be overthrown only when it is clear and unquestioned that it violates the fundamental law. * * *

* * *

" 'The doctrine is elementary that no act of the general assembly should be declared unconstitutional unless it is

clearly and palpably so.' *People v. Commissioners,* 12 Colo. 89 at 93.

" 'A fundamental principle of construction requires those who seek to overthrow a statute on account of its repugnance to a constitutional provision to show the unconstitutionality of the act beyond all reasonable doubt.' *Denver City v. Knowles,* 17 Colo. 204 at 211.

" 'When an act of the legislature is attacked as in violation of the constitution of the United States, or of the state, by familiar rule, we are required to uphold the legislation unless its unconstitutionality appears beyond all reasonable doubt.' *Ind. Ditch Co. v. Agr. Ditch Co.,* 22 Colo. 513 at 528.

" 'Every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the legislature should be sustained.' *Munn v. People,* 94 U.S. 113."

To the Consumers' League case, supra, we add only *Chicago, B. & Q. Railroad Co. v. School District,* 63 Colo. 159, 166, 165 Pac. 260; *Rinn v. Bedford,* 102 Colo. 475, 477, 84 P. (2d) 827.

■ Secondly, the same rules of construction apply where the statute under consideration was enacted pursuant to the inherent police powers of the state. The property of every citizen and his right to engage in business is subject to the police power of the state, which is not easily defined, but as a concise statement of its purpose and extent, we quote from *State v. Pitney,* 79 Wash. 608, 140 Pac. 918; Ann. Cas. 1916 A 209. "If the law under consideration is a proper exercise of the police power, its constitutionality will hardly be denied. In determining the validity of the law, therefore, inquiry must be directed to whether its provisions come within the scope of the police power. The early decisions define this power as extending to those regulations promulgated by or under the authority of the legislature which had for their object the promotion of the public health, the pub-

lic morals, or the public safety. Without reviewing the evolution of the law upon this subject, as evidenced by the decisions of courts of last resort, it may be said that, whatever may be the limits by which the earlier decisions circumscribed the power, it has, in the more recent decisions, been defined to include all those regulations designed to promote the public convenience, the general welfare, the general prosperity, and extends to all great public needs, as well as regulations designed to promote the public health, the public morals, or the public safety. In *Chicago, B. & Q. R. Co. v. People of Illinois ex rel. Drainage Com'rs.*, 200 U.S. 561, 592 [26 Sup. Ct. 341, 50 L. Ed. 596] it was said: 'We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety.' "

"Police power" is extensively discussed in the case of *Bland v. People*, 32 Colo. 319, 76 Pac. 359, 65 L.R.A. 424. In that case we said at page 325: "In the exercise of the police power, the legislature has a large discretion, and it is our duty to sustain such legislation unless it is clearly and palpably and beyond all question in violation of the constitution." and at page 331: "The foregoing authorities establish: * * * 2. That in the exercise of the power the legislature may adopt such reasonable means as is necessary to accomplish the purposes of the statute. 3. That to the legislature is confided a large discretion in declaring the public policy, and that unless the legislation is clearly and palpably in violation of the fundamental law, it will be sustained. 4. That all property is held under the implied obligation that the owner's use of it shall not be injurious to the public."

It is contended on behalf of defendant that the statute is unreasonable and places undue and unnecessary burdens upon persons who may be innocent of any offense. Argument by way of analogy and example to this end comprises more than half of defendant's brief, but no

decision of any appellate court wherein a similar statute has been declared unconstitutional has been called to our attention. On the other hand, the courts of last resort in jurisdictions other than Colorado have with unanimity upheld statutes to the same import as, and in several instances almost identical with, ours, and have answered negatively' defendant's contentions on constitutional objections herein raised by him, as well as others not assigned.

In a case involving a statute very similar to our Colorado act, except that it applies only to persons who "occasionally" slaughter animals for beef, the Supreme Court of South Dakota in 1913, in the case of *State v. Devers*, 32 S.D. 473, 143 N.W. 364, held that the gist of the offense is the selling of the beef without exhibiting the hide. Further, that statements in the statute relating to the killing of animals are only for the purpose of limiting the class of the offense to persons who slaughter cattle for beef, and that the material thing to be determined is that the person who offered the beef for sale be the same person who slaughtered the animal.

The supreme court of New Mexico in 1929, in construing a statute very similar to ours, in the case of *State v. Knight*, 34 N.M. 217, 279 Pac. 947, held that a statute requiring one who kills a bovine animal to preserve intact the hide for thirty days, relates to a distinct and separate offense from that provided for by a statute concerning the larceny of livestock, and that the two are wholly unrelated and "are not only distinct in law, but also in fact." It was also held therein that the statute did not violate any constitutional provision against self-incrimination.

Again referring to New Mexico, we find *State v. Walker*, 34 N.M. 405, 281 Pac. 481, in which the supreme court of that state held that the statute above referred to in the Knight case "is a reasonable police regulation and not a deprivation of property without due process." In the same case it was also held that such statute is not in

violation of the constitutional provision against self-incrimination, nor of that prohibiting unlawful search and seizure.

In an earlier decision in New Mexico (1914) where a different statutory provision was before the court, but which also relates to range cattle, it was held that the police power may be properly applied to the protection of livestock under range conditions and that a statute preventing the holding under herd of calves under seven months of age to be a misdemeanor, is a proper exercise of police power. *State v. Brooken,* 19 N.M. 404, 143 Pac. 479, cited with approval in 1935 in a case involving the same statute. *State v. Blevins,* 39 N.M. 532, 51 P. (2d) 599.

In the case of *Jungst v. Baldridge* (Idaho), 51 F. (2d) 379, appeal on which was dismissed in 1930, 282 U.S. 906, 51 Sup. Ct. 20, 75 L. Ed. 797, the court said: "That reasonable means for the prevention and detection of the theft of livestock, particularly in a country where they commonly run on the open range, are within the police powers of the state, is too clear to admit of discussion." In that case it was contended that the action was violative of numerous constitutional provisions, including the provision against taking of private property without due compensation, the equal protection under the law of all citizens and to the general limitations to legislative power, in answer to which the court said: "But, if we have correctly analyzed the act, it contravenes none of these great principles, and is well within the range of commonly exercised police power. The act is not novel or exceptional."

While we are not bound by the decisions above referred to from other jurisdictions, we are convinced that in view of the similarity of the statutes therein discussed with the Colorado statute, with which we are now concerned, the logic and reasoning of those decisions must control. We are unimpressed by attempts at distinguishment in principle or objective between our statute and

those of the jurisdictions from which the foregoing cited cases come. No sufficient or valid reason appears by which we should feel impelled to adopt a view contrary thereto and wherein we would appear as a minority of one. We conclude, therefore, that the statute upon which the information is based, is not subject to attack on constitutional grounds.

Considerable reliance is had by counsel for defendant upon the recent case of *Garcia v. People,* 121 Colo. 130, 213 P. (2d) 387, which, it is contended, is decisive of the question here presented. That case was concerned with an entirely different statute and an entirely different principle, and defendant's contention finds a complete answer in the two New Mexico cases above referred to: *State v. Knight; State v. Walker, supra.*

II.

It is contended that the testimony of certain officer witnesses pertaining to statements made to them by Mow was of such nature as to be inadmissable and highly prejudicial to this defendant. In the first place there is very little reference in the testimony of the officers pertaining to statements said to have been made to them by Mow that it not within the facts otherwise admitted. True, the officers testified that Mow did make certain statements concerning how defendant usually disposed of hides, but this was very slightly, if any, different from what defendant himself testified when he took the stand in his own behalf. Furthermore, at the time of reception of such evidence the court was careful to state that it would all have to be connected up later, which would itself indicate that it was not at that time complete, and then at the time of the dismissal of Mow, the court instructed the jury fully to disregard all statements testified to as having been made by Mow, and particularly those portions which are now made the basis of the assignment of error. At the close of the people's case the court again cautioned the jury about these matters, and directed the jury not to consider any of the

testimony pertaining to statements made by Mow out of the presence of the defendant. In the light of the circumstances of this case, we cannot believe that the jury could possibly have been confused or misled by any of the testimony of the officers concerning the Mow statements, and we are satisfied that the defendant suffered no prejudice on account thereof.

During the course of trial defendant took the stand in his own behalf, and upon cross-examination, was asked if he had previously been convicted of felony. He admitted that he had. He then was asked how many times, to which he answered, twice. He then was asked the nature of the offenses of which he was convicted, and all of his answers thereto were evasive. Objection was made at the time to either court or counsel further questioning the defendant concerning the nature of the offenses of which he had been previously convicted, and such is now assigned as error. This question has been well settled in previous decisions of our court. In *Davis v. People,* 77 Colo. 546, 238 Pac. 25, our court said, page 551: "Such cross-examination is not limited to the single question but a reasonable latitude is permitted, especially where, as here, the witness equivocates." In *Dennison v. People,* 65 Colo. 15, 174 Pac. 595, citing with approval the case of *LeMaster v. People,* 54 Colo. 416, 131 Pac. 269, we held that the extent of such examination in cases of this kind is largely within the discretion of the trial court, and that in the absence of a showing of abuse of discretion no error occurs. In the case before us it is apparent that defendant was equivocal and that the court and counsel pursued the matter no further than was necessary to bring out the fact that he had been twice previously convicted of larceny. Propriety indicates, perhaps, that the court itself should have refrained from participation in the examination, notwithstanding that it is clear that his only purpose was to the end of clarification and certainty. We conclude that no prejudice to defendant resulted on this account,

and that there was no sufficient abuse of discretion on the part of the court arising from this incident to justify reversal of the judgment.

### III.

By their 8th assignment, counsel for defendant charge error on the part of the court in refusing to give their tendered instruction "B"; and by the 11th assignment, that the court committed error by giving to the jury instructions 7 and 8. As these require the same study for construction, they will be considered together.

The particular statute with which we are here concerned is section 7, chapter 28, '35 C.S.A., which reads as follows: "It shall be unlawful for any person, company or corporation, to sell or offer for sale, except as a butcher, who has filed a bond as provided by law having a permanent place of business, the carcass of a beef or veal or any portion of such carcass, (1) without first exhibiting the hide intact of the same, and exposing the brand upon the hide, if any, to the purchaser, and it shall be the duty of any such person, company or corporation selling or offering for sale any such carcass of beef or veal (2) to preserve the hide of the same for a period of thirty days, and (3) to exhibit the same for inspection upon the demand of any person." (Parenthesis and figures therein supplied.)

In order to get a proper understanding of the purport and intent of this section, it is helpful to consider the two following sections of chapter 28, in effect at the time of the filing of information in this case, section 8 which reads:

"It shall be unlawful for any person * * * to kill for his * * * use and consumption, any beef or veal without preserving the hide of such animal * * * for a period of not less than thirty days and presenting the same for inspection upon the demand of any person."

By section 9 the legislature declared that "any person * * * violating *any* of the provisions of the two preceding

sections shall be deemed guilty of a misdemeanor. * * *"
(Italics supplied.)

By the tendered instruction "B" counsel for defendant regarded the information as setting forth one offense. Assuming such to be the case, the instruction is erroneous in that by part "(2)" it would require the people to prove a *demand* by some person to see the hide of the animal, whereas the statutes make it unlawful for the seller of the carcass to offer the meat for sale without "first exhibiting" the hide. In presenting their motion for new trial, counsel for defendant contended that the items set forth in the tendered instruction "B" comprise the elements of the offense charged, failure on behalf of the people to prove any one of which would necessitate an acquittal. In the supplemental motion for new trial counsel, in attacking given instructions numbers 7 and 8, say that by them the court failed to correctly state the law in that thereby the statute is interpreted as creating multiple offenses, "whereas, a correct interpretation of the statute would create but one offense." In conformity with the contention of defendant's counsel at that time, the court construed the statute as constituting but one offense, and so instructed the jury by instruction No. 8. From the brief of counsel for defendant, now before us, in taking exception to the court's construction of the statute as creating but one offense, we quote as follows: "We cannot follow the logic of the trial court. The statute creates three separate offenses, in each of which the sale or offer of sale of beef is a necessary element. Each offense consists of different elements. We cannot see how the statute can create but one offense." We, on the other hand, are quite at a loss in undertaking to visualize the extent of consideration expected of us to a proposal that we declare error on defendant's position taken in this court when it is exactly contra to that urged upon the trial court during and throughout the course of the trial, including motion for new trial. Especially are we confounded in view of the fact that we have several

times stated the rule to be that review by our court is to be confined to points embraced within defendant's motion for new trial. *Eachus v. People,* 77 Colo. 445, 446, 236 Pac. 1009; *Davis v. People,* 77 Colo. 546, 550, 238 Pac. 25. Application of this principle would be tantamount to confession of lack of merit in the matter now urged upon us.

We are, nevertheless, in agreement with counsel that section 7, construed together with the two following sections, creates three separate offenses. Instruction No. 7, given by the court, substantially sets forth the statute, and is a correct instruction. Instruction No. 8 is incorrect, but its inaccuracy works decidedly to the benefit and advantage of defendant, and he, therefore, may not be heard to complain of an erroneous instruction which is decidedly in his favor. *Munsell v. People,* 122 Colo. 420, 424, 222 P. (2d) 615; furthermore, it is quite evident that instruction No. 8 was given by the court because of the insistence of counsel who at the trial represented defendant, that the statute created but one offense and that all of the various clauses therein were to be considered but elements thereof. By instruction No. 8 the court charged the jurors that they must not only find that the defendant offered the beef for sale without at the time exhibiting the hide intact and exposing the brand thereon, if any, to the said purchaser, but that they also must find that defendant had failed to preserve the hide of the beef for a period of thirty days and, further, that the defendant had failed to exhibit the same for inspection of any person within said period of thirty days. This clearly placed an undue burden upon the prosecution and was to the great benefit and advantage of defendant. Had defendant at the conclusion of the people's case moved to require the district attorney to elect upon which of the three charges he would rely for conviction, such a motion would have been proper and should have been granted. No such motion was made.

## IV.

Error is assigned because of insufficiency of the evidence. These assignments are particularly emphasized because of the error occurring in instruction 8, last above discussed, and it is said that there is insufficient evidence in support of the charge that, (1) the defendant failed to preserve the hide for a period of thirty days, and (2) failed to exhibit it to inspection upon demand of any person within that period of time.

The evidence with respect to these matters is conflicting, and thus, particularly under the instructions as given, it became the duty of the jury to determine whether all of the elements as set forth in the court's instruction had been proven to their satisfaction from all the evidence beyond a reasonable doubt. The jury apparently being satisfied thereof, so found, and there being ample evidence shown by the record to support such finding, it may not here be disturbed. This rule is so well established that citation of numerous authorities is unnecessary; hence we mention but two cases, both recent. *St. Louis v. People,* 120 Colo. 345, 352, 209 P. (2d) 538; *Trujillo v. People,* 122 Colo. 436, 440, 222 P. (2d) 775.

The information is substantially in the language of the statute, and even though it contains several distinct offenses, where the jury of necessity must have found defendant guilty of all, he can claim no prejudice because of conviction of one.

It is for the jurors to determine the credibility of witnesses, and in this instance they must have taken into consideration the conflicting statements made by the defendant to the officers, as well as conflicts between statements attributed to him by the officers and his testimony when he appeared as a witness in his own behalf. It then became a question of credibility between the defendant and officers who appeared as witnesses. The following quotation from *State v. Blevins, supra,* is so apt that we use it as expressing our views: "We do

not say that the manner and demeanor of one accused of crime is sufficient to convict him. However, coupled with the evidence in the cold record before us, we would not be justified in setting aside the verdict."

Accordingly, the judgment is affirmed.

Mr. Justice Alter, Mr. Justice Moore and Mr. Justice Holland dissent.

Mr. Justice Moore dissenting.

I cannot concur in the views expressed in the majority opinion. My dissent is based upon fundamental principles of constitutional law which I believe are completely disregarded by affirmance of the judgment in this cause.

The statute in question, in substance, makes a criminal of any person (not a bonded butcher) who sells or offers for sale the carcass, or any portion thereof, of a beef or veal, without first exhibiting to the purchaser the hide of the animal and exposing the brand, if any. One who sells or offers to sell any such carcass, or portion thereof, must "preserve the hide of the same for a period of thirty days and exhibit the same for inspection upon the demand of any person." If he fails to do any of these things he subjects himself to prosecution as a criminal. If this statute is upheld against the constitutional objections hereinabove briefly mentioned, it must be held to be a proper exercise of the police power of the state.

Generally, the legislature in the exercise of the police power of the state may, within constitutional limitations, adopt statutes which are appropriate and reasonably needful in the promotion and protection of the public health, the public morals, and the public safety. However, any legislative exercise of the police power which violates any right guaranteed by the national or state constitutions is invalid. *In Re Morgan*, 26 Colo. 415, 58 Pac. 1071. If a statute purporting to have been enacted to protect the public health, morals or safety, has no real

or substantial relation to these objects or is clearly an invasion of the constitutional freedoms and liberties of the people to use, enjoy or dispose of their property without unreasonable governmental control or regulation, the courts should declare it void. *Platte & Denver C. & M. Co. v. Dowell,* 17 Colo. 376, 30 Pac. 68. "Freedom is the general rule and restraint the exception." *Wolff Packing Co. v. Court of Industrial Relations,* 262 U.S. 522. *In Chenoweth v. State Board,* 57 Colo. 74, 141 Pac. 132, we said: "The legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an act, ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the courts have a right to examine the act and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects."

An owner cannot be deprived of his property, *or the use thereof* without due process of law. The term "property," as used in due process of law guarantee, embraces *every kind of property,* or right, of which a person may have exclusive control or dominion. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 Sup. Ct. 158.

The term "property" as used in the due process clause includes the right to make any legitimate use, or disposal, of the thing owned. Neither may an owner be deprived of any of the essential attributes of his property without due process of law, or without just compensation. *Delaware L. & W. R. Co. v. Mayor et al.,* 14 F. (2d) 257; *People ex rel. Schimpff v. Norvell,* 368 Ill. 325, 13 N.E. (2d) 960. In the case last cited we find this language: "The privilege of a citizen to use his property according to his own will is not only a liberty but a property right, subject only to such restraints as the common welfare may require, and while new burdens

may be placed on the property when the public welfare demands it, this power is limited to enactments *having direct reference to the public health, comfort, safety, morals and welfare.*" (Italics supplied.)

In *Buchanan v. Warley,* 245 U.S. 60, 38 Sup. Ct. 16, we find: "Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, *use, and dispose of it. The Constitution protects these essential attributes of property.*" (Italics supplied.) See also, *United States v. Carolene Products Co.,* 7 Fed. Supp. 500.

Any legislative action which takes away any of the essential attributes of property, or *imposes unreasonable restrictions thereon,* violates the due process clause. *People v. Chicago M. & St. P. Ry. Co.,* 306 Ill. 486, 138 N.E. 155; *Bettey v. City of Sidney,* 79 Mont. 314, 257 Pac. 1007. We quote the following from the Bettey case: "The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated *without the physical taking of property* for public or private use. Property may be destroyed, or its value may be annihilated; it is owned and kept for some useful purpose and it has no value unless it can be used. Its capability for enjoyment and adaptability to some use are *essential characteristics and attributes* without which property cannot be conceived; and hence any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property. (Matter of Application of Jacobs, 98 N.Y. 98, 50 Am. Rep. 636.)

"Laws enacted in the exercise of the police power, whether by municipal corporations acting in pursuance of the laws of the state or by the state itself, *must be reasonable,* and are always subject to the provisions of both the federal and state constitutions, and they are always subject to judicial scrutiny. (*McCray v. City of Chicago,* 292 Ill. 60, 126 N.E. 557; 6 R.C.L. 244.)" (Italics supplied.)

Under this statute the conduct of the citizen, which is

made criminal, has no direct reference whatever to public health, morals or safety. I am at a loss to understand how the requirement of exhibiting a hide, or of keeping it for thirty days, would improve in any manner whatever the health of the people, the morals of the people, or the safety of the people. It is argued, and the majority opinion indicates, that this measure was adopted on behalf of the livestock industry, "and is designed to assist in the prevention of larceny of livestock." It is not pointed out, however, how a quarter of beef, dressed and ready for consumption, can in any manner whatever be identified with the hide of any particular animal. As aptly put by Mr. Justice Holland in his dissenting opinion, hundreds of law abiding and honest citizens are restricted in the free use of property, which they own, in the hope that some person who may have committed larceny, but against whom no evidence of such crime is available, may be apprehended and punished for doing something which is not inherently wrong.

While it is true, as pointed out in the court's opinion, that some states have upheld similar statutes against the objections here made to their constitutionality, prior to this time Colorado never has passed upon the question, and I cannot agree that the decisions cited from other jurisdictions should be followed in this state. I am persuaded that such decisions tend to weaken and destroy the force and effectiveness of constitutional guarantees.

Under the stress and strain of war and other so-called national emergencies, appellate courts in recent strenuous years have been inclined to emasculate constitutional provisions until basic guarantees of our constitutions, both national and state, have lost much of their original meaning. This result has been brought about in many ways, and no doubt with the best of intentions. However, if constitutional government is to survive, the creeping paralysis that has set upon the once deep rooted concepts of constitutional law must be met by appellate courts with a reaffirmance of fundamentals, and a rededication

by appellate judges to the task of restoring health and vigor to our constitutional body to the end that the constitutions of our state and nation shall in actual practice amount to a first line of defense against invasions upon the freedoms and liberties of the people. The alarming truth is that, notwithstanding the hue and cry concerning threatened loss of freedom from without, our constitutional guarantees have become more and more impotent and powerless in courts of justice to stand as a bulwark of strength against the invasion of those fundamental and inalienable rights and privileges which the constitutions obviously were intended to guarantee the individual.

In my opinion the judgment of the trial court should be reversed and the cause remanded with directions to discharge the defendant.

MR. JUSTICE ALTER and MR. JUSTICE HOLLAND authorize me to say that they concur in this dissent.

MR. JUSTICE HOLLAND dissenting.

Believing that the fair probabilities of reason do not concur with the majority opinion herein, I declare my disagreement therewith, and present my dissenting views. I will refer to plaintiff in error as defendant.

Under section 7, chapter 28, '35 C.S.A., relating to butchers, an information was filed against defendant and one David Richard Mow, March 3, 1950, charging that on the 11th day of January, 1950 in Mesa county, Colorado, defendant, not being a butcher who had filed a bond as provided by law, and not having a permanent place of business, unlawfully sold to Edward D. Miller a portion of a carcass of beef, to wit: one quarter of beef, without first exhibiting the hide intact of the same, and exposing the brand upon the hide, if any, to the purchaser, and did then and there unlawfully fail, neglect and refuse to preserve the hide of the said beef for a period of thirty days, and to exhibit the same upon the demand of Lawrence Gant, contrary to the form of the statute in such case made and provided.

Trial was had to a jury on November 17, 1950, which returned a verdict finding defendant guilty as charged in the information. Information as to Mow was dismissed at close of the People's case, for lack of evidence. After overruling a motion for new trial, the court entered judgment and sentence on the verdict by imposing a fine of three hundred dollars and imprisonment for ten months in the county jail.

The writ of error herein is prosecuted on twelve assignments of error, and those most strongly urged are, in substance, that the statute under which defendant was convicted is void in that it deprives persons of liberty and property without due process of law in violation of the Constitution of the State of Colorado and of the United States; that it is void in that it compels a person to be a witness against himself in a criminal case in violation of the Colorado Constitution; that the court erred in permitting the state to present testimony as to conversations had with codefendant; the refusal of the court to give a tendered instruction; and the giving of erroneous instructions.

I quote the section of the statute involved: "§7. Persons other than bonded butchers to exhibit and preserve hide.—It shall be unlawful for any person, company or corporation, to sell or offer for sale, except as a butcher, who has filed a bond as provided by law having a permanent place of business, the carcass of a beef or veal or any portion of such carcass, without first exhibiting the hide intact of the same, and exposing the brand upon the hide, if any, to the purchaser, and it shall be the duty of any such person, company or corporation selling or offering for sale any such carcass of beef or veal to preserve the hide of the same for a period of thirty days, and to exhibit the same for inspection upon the demand of any person."

The trial court construed this statute as creating one offense, that is, the illegal sale or offer of sale; and further instructed the jury that the elements of the offense

charged are: 1. Sale of carcass of beef or part of the carcass to the witness Edward D. Miller; 2. that said sale was made without first exhibiting the hide intact of the said beef and exposing the brand upon the hide, if any, to the said purchaser; 3. that the defendant failed to preserve the hide of the said beef for a period of thirty days; 4. that the defendant failed to exhibit the same for inspection upon the demand of any person within said period of thirty days. The court in ruling upon the motion for a new trial, held that the violation of any one of these elements would make the sale illegal. The court further stated that if defendant had presented the defense of attempting to comply with the statute and for reasons beyond his control, could not keep the hide for the thirty-day period, then the court would have, upon request, instructed the jury that if failure to retain the hide for thirty days was for reasons beyond the control of defendant, he could not be found guilty.

On the face of this statute, the mere doing or failing to do the matters prescribed therein constitute the crime. While this section of the statute is to be found under the chapter relating to butchers, it was unmistakably intended by the legislature to aid in the prevention of the theft of cattle. At the time of the commission of the alleged offense, our statute concerning the larceny of cattle, which contained many of the elements here involved, had been held to be void, and deprived defendant of due process of law in violation of our state Constitution. *Garcia v. People,* 121 Colo. 130, 213 P. (2d) 387. Undoubtedly the district attorney in the case before us resorted to this section of the statute under the regulation of butchers instead of the general larceny statute. On the face of the statute numerous possible defenses are not available. Ownership is no defense; true explanation as provided in the cattle-stealing statute is no defense; accident is no defense; theft of the hide by another party is no defense; and under many circumstances, the statute virtually prohibits the sale, and especially resale, of

property rightfully possessed and owned. "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrong-doers also may be caught." *Fairmont Creamery Co. v. State of Minnesota,* 274 U.S. 1, 47 Sup. Ct. 506, 71 L. Ed. 893.

The suggestion of the trial court that an instruction to the jury on some of these defenses should have been presented, if followed, would be equivalent to judicial legislation. "An exception not made by the legislature cannot be read into the statute." *Karoly v. Industrial Commission,* 65 Colo. 239, 176 Pac. 284.

The retention of the hide is only one of the many means of proving ownership. The true owner of a beef may rightfully kill same and within his 'lawful rights, dispose of all or part of his property by a sale. If he does not display the hide, he has committed a crime and may be convicted. The owner may kill a beef for his own use and preserve the hide for the thirty-day period and then sell the hide, and be innocent of any violation of the statute; however, if for any reason, best known to himself, he wanted to sell, he would be prevented from selling any part of the carcass on hand without a violation of the statute. He is deprived of the use of his property by this unreasonable means. The buyer of the beef, or part of same, having seen a hide and a brand thereon, after thirty days decides to sell all or part of what he bought, cannot do so because there is no hide available to display to the second buyer, the original owner having kept the hide for thirty days and sold it or otherwise disposed of it.

These are illustrations of the dangers lurking within the strict provisions of the statute. There is no rational connection between the failure to display the hide and the commission of the crime of larceny. *Garcia v. People, supra.* That the legislature may make the doing, or failure to do, an act a crime regardless of the intent of

the person to do or omitting to do the act, is fundamental; however, the legislative act must be reasonable. The Attorney General states in reference to the cattle-stealing act held unconstitutional in the case of *Garcia v. People, supra,* that "a defendant could violate the act under consideration whether there had been a theft of any beef and even if he owned the beef himself." This statement applies with equal force to the statute now before us.

The trial court stated that, by the information here, only one offense was charged, namely, the alleged sale of beef. The people contend, "the statute makes it unlawful to sell without exhibiting the hide and imposes a duty upon a person to preserve the hide for a period of thirty days after the sale. It is submitted that the latter part of the statute does not constitute a separate crime."

I am not in agreement with the trial court that only one offense is created by the statute or the information. The sale of the beef is a necessary incident or element in committing the other offenses created by the statute. If defendant had been chargd with selling a portion of a carcass of beef without displaying the hide and acquitted of such charge, a prosecution for failure to keep the hide for thirty days would not be barred. The elements involved in the statute are distinctly different and require different evidence to present. It is manifest that the legislature considered the elements to be distinct for the reason that in providing the penalty for a violation of this statute, the legislature said, "* * * violating *any of the provisions* of the two preceding sections shall be deemed guilty of a misdemeanor * * *." §9, c. 28, supra.

Defendant was charged, and the jury instructed, as to the sale of a part of a carcass of beef to Miller without displaying the hide and not keeping the hide for thirty days and not exhibiting same on the demand of any person. The evidence discloses that he was not questioned about the hide for the beef he had sold to Miller, but was questioned about a hide to a quarter of beef

hanging in his shed. There was no connection shown by the people of the beef hanging in the shed as being a part of the beef sold to Miller. The verdict of the jury being general, it is impossible to say upon which element involved it was based.

This statute has been in effect for over a half century, during which time no case involving the statute has been presented to this court or our Court of Appeals. As was said in *People v. Mooney,* 87 Colo. 567, 290 Pac. 271, "These circumstances denote that law-enforcing officers for many years have considered the statute as ineffective and wholly insufficient to constitute the violation thereof a crime. * * * 'The practical construction given to a statute by the public officers of the state, charged with the performance of public duties in connection therewith, is always entitled to consideration, in case of doubt.' "

As support of my views herein to the end that the statute is unreasonable and in such unreasonableness is comparable to sections 33 and 39 of chapter 160, '35 C.S.A. which were made nugatory by our decision in *Garcia v. People, supra,* we have an amendment of the sections here involved being sections 7, 8 and 9, chapter 28, '35 C.S.A. by our 1951 legislature appearing as chapter 101, page 220, Session Laws of 1951. This amendment now makes it a felony to violate section 7, the section here involved, and contains all of the elements constituting separate and distinct offenses; however, the amended act provides for the inspection and release of the hides by a brand inspector prior to the expiration of the thirty-day period and also makes it a felony to have the carcass or any part thereof in possession without complying with the other, now outlawed, provisions of the statute. Without inference that other assignments of error and points strongly urged are without merit, I feel that a discussion thereof is not required. For the reasons herein stated, this statute should join the cattle-stealing statute now in oblivion as a result of our decision in the case of *Garcia v. People, supra.* The verdict and judgment thereon en-

tered upon such statute should be reversed for this reason as well as that otherwise indicated herein. The cattle-raising industry is not without my sympathy in these matters and all reasonable means of protection should be afforded; however, larceny of cattle and other livestock can be protected without the aid of imperfect statutes that involve innocent persons in an attempt to convict a thief. Here, the trial court stated that the intent of the statute involved was to prevent stealing of cattle. In this instance, we have, under that guise, a defendant convicted of a misdemeanor, and what is now a felony, without the slightest inference of the theft of any cattle.

The judgment of the trial court should be reversed.

MR. JUSTICE MOORE joins in this dissent.