No. 22757.

ALBERT JAMES WASHINGTON *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(455 P.2d 656)

Decided June 16, 1969

EDWARD H. SHERMAN, Public Defender, TRUMAN E. COLES, Deputy, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

ALBERT JAMES WASHINGTON was charged with the crime of aggravated robbery. He entered pleas of not guilty and not guilty by reason of insanity at the time of the alleged commission of the crime. Pursuant to C.R.S. 1963, 39-8-1, a jury trial was first held on the sanity issue, resulting in a verdict that he was sane at the time of the alleged commission of the crime. Thereafter, a separate jury trial was held on the aggravated robbery charge, and defendant Washington was found guilty and sentenced by the trial court.

By this writ of error, defendant seeks reversal of his conviction. Of his four assignments of error, only the one which pertains to the trial of the sanity issue is held to be prejudicial and requires remand to the trial court for a new trial on that issue only.

About 11:30 P.M. on December 18, 1965, a man entered

the Burger and Shake Drive In, at 20th and Washington Streets in Denver, and ordered a hot dog from the waitress, Brenda Jenkins, who relayed the order to the night manager, Clarence Slaven. While Mr. Slaven was preparing the order in the kitchen, he heard the cash register bell ring. He immediately went out to the main room, where he saw Miss Jenkins standing against the wall and a man pointing a gun at her while he was rifling the register with his other hand. When about four feet away from the robber, Mr. Slaven told him that he could not "hold up" the place and get away with it, whereupon the man shot Mr. Slaven, wounding him in the shoulder. Several hours later, Miss Jenkins was at a club where her mother worked, and there saw defendant whom she recognized as the robber. The police were called and they took defendant into custody. Miss Jenkins later identified defendant as the robber in a police lineup. At the trial both Mr. Slaven and Miss Jenkins made repeated positive identifications of defendant as the man who committed the robbery on December 18, 1965. A third witness identified defendant as the man who had robbed the same place a week earlier. Additional facts will be mentioned in the course of considering defendant's several assignments of error.

## I — The Sanity Trial

At the jury trial on the sanity issue, the trial court instructed the jury that "the people have the burden of proof to establish by a *preponderance of the evidence* that the defendant was sane at the time of the alleged commission of the offense . . ." This instruction adhered to the statutory requirement of C.R.S. 1963, 39-8-1, as amended by Chapter 125, Laws of 1965. Defendant alleges that this instruction permitting the prosecution to establish defendant's sanity merely by a preponderance of the evidence was prejudicial, and that the statute upon which it was based was an unconstitutional deprivation of due process of law. The People have confessed error in this regard. We agree that this in-

struction constituted prejudicial error. In *People ex rel. Juhan v. District Court for the County of Jefferson,* 165 Colo. 253, 439 P.2d 741 (decided after the trial in the instant case), this court specifically held that Chapter 125, Laws of 1965, insofar as it permitted the People to establish an accused's sanity by a preponderance of the evidence was a denial of due process of law and thereby unconstitutional.

## II — The Substantive Trial

During the course of the trial on defendant's plea of not guilty to the charge of aggravated robbery, the defendant claims that the trial court committed three errors which were prejudicial to him, and therefore, constitute grounds for reversal.

■ *First,* defendant complains of the admission into evidence of testimony by two witnesses concerning a fingerprint found at the scene of the crime. Both witnesses testified that the fingerprint was too incomplete to be of any value, and that it was impossible to attribute it to any individual. At the conclusion of the People's case, defendant moved the court to strike the testimony, and the motion was granted. The trial court gave an immediate cautionary instruction to the jury to disregard *all* of the fingerprint testimony, because the witnesses did not connect the print with defendant. Later, as part of his general charge in Instruction 14, the trial court instructed the jury that they were not to consider testimony or exhibits which were ordered stricken. In the light of these circumstances, we do not agree with the defendant's contention that the jury could have been misled to defendant's prejudice by the fingerprint testimony. *Coy v. People,* 158 Colo. 437, 407 P.2d 345, *Eachus v. People,* 124 Colo. 454, 238 P.2d 885, *appeal dismissed,* 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698, *Schreiner v. People,* 95 Colo. 392, 36 P.2d 764, *Andreen v. People,* 91 Colo. 341, 14 P.2d 695, *Goldberger v. People,* 45 Colo. 327, 101 P. 407. We fail to perceive how the fingerprint testi-

mony could have been prejudicial to defendant; and indeed its effect, if any, was beneficial to defendant.

█ *Second,* defendant claims that the trial court erred in admitting an extra judicial statement made by defendant. The events surrounding the statement are determinative of our conclusion. According to defendant's own testimony, given *in camera* while the trial court was determining the admissibility of his several extra judicial statements, he asked the police to go to a certain address to get his coat. The officers took defendant to this address, an apartment, where they came upon four acquaintances of the defendant, including a Mr. Jones. Certain conversations ensued between the police and the four occupants, in the course of which the defendant made certain statements to these occupants. The only statement made by defendant while at the apartment which the court ruled to be admissible was made in answer to a question from his friend, Mr. Jones. The total testimony thus admitted is set forth verbatim:

Mr. Jones (to defendant): "What happened?"

· Defendant (to Mr. Jones): "That Burger Bar, I stuck up and shot some guy."

We are aware of no rule, nor does defendant's counsel cite us to any authority, which would bar the admissibility of defendant's voluntary incriminating statement as here made in answer to a question from his friend. Nothing in either *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, or *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 interdicts such an extra judicial statement. We have previously declined to extend the doctrine of these cases to include an accused's utterance directed to his friend under comparable circumstances. See *Washington v. People,* 158 Colo. 115, 405 P.2d 735, *cert. denied* 86 Sup. Ct. 1217, 383 U.S. 953, 16 L.Ed.2d 215. There is nothing in this record to indicate even to the slightest degree that this statement was made in response to any process of interrogation initiated by the police.

■ *Third*, defendant assigns as error that portion of the People's voir dire in which the prosecutor queried the prespective jurors concerning their respective experience with psychology and psychiatry. Defendant's motion for mistrial on this ground was overruled by the trial court. Defendant here contends that this line of interrogation may have given the jury the impression that during the trial the defendant would present medical evidence of his inability to formulate the specific intent required to establish the crime of aggravated robbery. It is on this highly speculative premise that defendant asserts that his constitutional right of not having to establish his innocence was violated. This argument, in our view, has no merit. It is so tenuous that it lacks any validity. The propriety of voir dire examination is within the sound discretion of the trial court, and in the absence of showing an abuse of that discretion, a trial court's refusal to grant a mistrial on this ground will not be disturbed on review. *Raullerson v. People,* 157 Colo. 462, 404 P.2d 149, *Routa v. People,* 117 Colo. 564, 192 P.2d 436.

We accordingly hold that the defendant's assignments of error relating to the substantive portion of the trial are without merit.

Because of the reversible error in the trial of the sanity issue, the jury's verdict which found the defendant sane at the time of the commission of the crime is ordered vacated, the judgment is suspended, and the cause is remanded for a new trial on that issue only. Upon retrial of that issue, if the jury's verdict is that the defendant was sane at the time of the commission of the crime, then the judgment shall be reinstated. If on retrial of the sanity issue the jury's verdict is not guilty by reason of insanity, the existing verdict of guilty of the substantive charge shall be vacated and the court shall make disposition of this cause as provided by law.

Mr. Chief Justice McWilliams specially concurring.

Mr. Justice Day not participating.

Mr. Chief Justice McWilliams specially concurring:

I specially concur and shall briefly explain my position in this matter.

The rule announced by a majority of this court in an Addendum to *People ex rel Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 dictates and requires that the judgment in the instant case as it relates to defendant's sanity trial be reversed. It is for this reason *only* that I now concur in the majority opinion.

It is my very strong personal conviction that Chapter 125, Laws of 1965 in nowise violates article II, § 25 of the Colorado constitution and does not in any manner offend due process. For an extended statement as to my views on this general subject, see my dissent in *People ex rel Juhan v. District Court, supra.*