## No. 16,137.

### ST. LOUIS v. THE PEOPLE.
(209 P. [2d] 538)

Decided July 22, 1949.   Rehearing denied August 29, 1949.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, for plaintiff in error.

Mr. JOHN .W. METZGER, Attorney General, Mr. JOSEPH E. NEWMAN, Acting Deputy, Mr. RAYMOND B. DANKS, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

SINCLAIR ST. LOUIS was convicted of the crimes charged in a three-count information, and separate sentences were pronounced, to review which he brings the case here by writ of error.

· The first count in the information upon which defendant was tried charged him with causing the death of one Ira Larson by operating an automobile while he was under the influence of intoxicating liquor ('35 C.S.A., c. 48, §39); the second count charged involuntary manslaughter ('35 C.S.A., c. 48, §33); and the third count charged reckless driving (S. L. '39, p. 229, §5). The trial judge sentenced defendant to a term of not less than eighteen months nor more than twenty-four months in the penitentiary on the first count in the information; to a term of sixty days in the county jail on the second count; and on the third count he was fined the sum of one hundred dollars and adjudged to pay the costs of the prosecution.

There are eleven assignments of error which are consolidated and presented here as two: (1) "The evidence is insufficient to sustain the verdict on the first count of the information which charges defendant with the felony of causing a death while driving under the influence of intoxicating liquor;" and (2) "The verdict of jury is void as to second count of the information."

█ █ 1. Under the first assignment we are obliged to carefully consider the evidence and determine its sufficiency to sustain the verdict of guilty and sentence imposed thereunder. In considering the evidence we are mindful of the presumption of law obtaining here, which is that the defendant had a fair and impartial trial before a competent court and jury, and that both discharged their respective duties under the law. The burden here is upon defendant to disclose and establish prejudicial error, if any, and it is our duty to review and apply the evidence so as to support the judgment. *Pollochio v. People,* 76 Colo. 574, 233 Pac. 833; *Jones v. People,* 93 Colo. 282, 26 P. (2d) 103; *Hershorn v. People,*

108 Colo. 43, 113 P. (2d) 680; *Shepard v. People*, 109 Colo. 582, 129 P. (2d) 104; 24 C.J.S., p. 728, §1856.

The evidence, thus considered, may be summarized: Defendant was the owner and operator of a night club located westerly from Craig, and in the early morning of December 26, 1947, he, together with employees, left the club for the purpose of returning to Craig. In the automobile driven by defendant there were four of his employees, two of whom were riding with him on the front seat, and two on the back seat. It was extremely cold, the windshield on defendant's car was frosted on the outside, and when defendant and his employees were seated in the car, the windshield became frosted on the inside resulting in its opacity. From the night club to Craig, defendant's car was driven at about twenty-five miles per hour on the left hand, or northerly, side of the highway which was bare and free of ice and snow. There is evidence that the frosting on the inside and outside of the windows of the car was so dense that the occupants could not see the road clearly, even though defendant, testifying in his own behalf, stated that he kept his windshield clear so that he had a vision of the highway. On nearing Craig, Lawson, who was approaching Craig on foot on the northerly side of the highway, and walking easterly, was struck by defendant's automobile, and died the same night as a result of his injuries. When Larson was struck by the car defendant inquired of the occupants as to what had caused "the bump" and was informed that he had struck a man. He slowed down or stopped a short distance after striking Larson, and two of the occupants in his car returned to where Larson was lying on the northerly side of the highway near, or partially in, the barrow pit. Defendant then drove his automobile to a grill or restaurant a short distance easterly from the point where the accident occurred. Another automobile, in which other employees of defendant had driven from the night club to the grill or restaurant was already at that place,

and defendant and the two remaining occupants in his car ordered breakfast. The occupant of his car who had returned to the injured man remained with Larson; and the other sought a telephone to summon medical assistance. In the meantime defendant had cautioned one or more of the occupants of his car to "keep their mouths shut." Defendant and the party at the restaurant remained there until some time between seven and eight o'clock a.m., when they repaired to their various abodes, at about the time that Larson was taken in an automobile to a physician's office.

The cook at the restaurant had an opportunity to observe defendant and party for three-quarters of an hour or more, and positively testified on direct examination that defendant "was drunk." However, on cross-examination his testimony was somewhat weakened. A waitress at the restaurant testified that defendant, and those with him at the restaurant, had been drinking "pretty heavy" and she reached this conclusion "because they were all loud and rowdy like and looked tired and worn out." A state highway patrolman was called shortly after Larson had been taken to the physician's office and before his removal to the hospital, who testified that upon inquiry he was told in effect that no one of the occupants of defendant's car then in the physician's office knew how Larson had been injured, and this patrolman was unable, until the afternoon of December 26th, to ascertain that it was defendant's car which was involved in the accident. He took two statements from defendant, in the first of which the latter stated that he had not had a drink of liquor; in the second, defendant stated that he had had one drink. At the inquest, defendant stated that he had had two drinks, one at about noontime, when he went to his night club, and the other at about two o'clock a.m. just at the time the bar was closed. Several witnesses testified that during the course of the evening of December 25th, and early morning of the 26th, they had had three or four or more

drinks of liquor. There is evidence that one of defendant's employees, who testified in his behalf, came to the physician's office while Larson was there, and although she was unacquainted with him, her sentimentality was inexplicable, and she was maudlin, which condition the jury well might have believed was the result of intoxication. According to testimony of defendant's witnesses, all of whom—except his wife—at the time of the accident were, and some of whom at the time of the trial also were employees of defendant, the bar was closed at two o'clock a.m., on the morning of December 26th, and all of them fixed the time of leaving the club at about five thirty o'clock in the morning of December 26th. Several of the witnesses testified that so far as they knew, defendant had drunk no intoxicating liquors after two o'clock a.m., and, they all testified, he was either normal when he left the night club or that his condition was such that they thought he was sober.

At the conclusion of the people's case in chief, defendant moved for a directed verdict on the ground of the insufficiency of the evidence to support the charges. This motion was denied, the court saying: "I don't believe we need any argument. There is evidence in the case of drunkedness immediately following the accident —drunkedness means under the influence of intoxicating liquor or that the man was intoxicated, and strong or weak, the evidence is there. The weight of the evidence is for the jury—there is further evidence that the defendant was operating his motor vehicle contrary to law and on the left hand side 'of the center of the highway. There is further evidence that he was operating that vehicle while his vision was obscured to some extent at least because of the frost on the windshield. I am not prepared to say that the evidence is conclusive or that it's of the proof of the kind and character which the law requires in order to convict. It isn't for the court—it's for the jury, and there is in the opinion of the court suf-

ficient evidence to carry the case to the jury on all three counts, and the motions will be overruled."

At the conclusion of the trial resulting in verdicts finding defendant guilty on all three counts of the information, a motion in arrest of judgment and for a new trial was filed by counsel for defendant, and therein was set forth the grounds now appearing as assignments of error. The court denied the motion, giving his reasons therefor at length, and stating, inter alia: "It is the duty of the court to review the entire evidence in the case and set aside the verdict, if the court does not in equity and in good conscience approve the conclusion and result reached by the jury. But that is not the whole statement. In several of the cases it is pointed out that it is not the duty of the court to act on its mere impression of what the evidence was, it is not the duty of the court to substitute its judgment for that of the jury. The jury are the judges of the issues of fact. Their resolution of the issues of fact, if there is supporting evidence of a creditable nature, is final. Now what is credible evidence? That's another matter in which the jury are the arbiters, the credibility of the witness. The evidence of drunkedness, as charged in the third [first] count of the information, driving while under the influence of intoxicating liquor, the court is impelled to observe is not overwhelming. It was not overpowering, but it was there. There is evidence that this man Smith who had the opportunity, and says he did observe the defendant for approximately three-quarters of an hour immediately following the accident. He gave his opinion that the defendant was drunk. It is true his testimony, his conclusion, was on cross-examination somewhat weakened. That is to say, the jury might have in the exercise of its function said that his testimony was weak. Nevertheless the testimony was there, the evidence was there. The jury evidently considered it carefully. * * * The court having listened to the evidence did of course have some impressions, but I don't think I had or don't

think I have what could be called an opinion of the guilt or the innocence of the defendant in the same sense that a jury must form that opinion, because it is not my function to resolve that. It is the jury's function, and with that in mind I haven't attempted to form an opinion as to the guilt or innocence of the defendant as I would have were I a member of the jury. At all events, the court at this time cannot say that it has that frame of mind in which it would by the duty of the court to set aside the verdict of guilty and to award a new trial. As noted, the evidence of drunkedness may not be overwhelming, and the court feels disposed to take that into consideration in imposing a sentence under the first count, and will do so, but beyond that, *the weight and sufficiency of the evidence is in the court's opinion, then and now, enough to submit it to the jury and to be bound by the verdict of the jury; and these observations and these remarks; of course, lead to the conclusion that the motion for the new trial is not well taken, and should be and is denied.*" (Emphasis supplied)

■ We have repeatedly held that where there is competent evidence to support the verdict of the jury, that the weight thereof, and credibility of the witnesses are questions exclusively for the jury's determination. *Eachus v. People,* 77 Colo. 445, 236 Pac. 1009; *Wilkins v. People,* 86 Colo. 401, 282 Pac. 252; *Carlson v. People,* 93 Colo. 570, 27 P. (2d) 745; *Davis v. People,* 112 Colo. 452, 150 P. (2d) 67.

■ In the present case there was a conflict in the evidence. The jurors had before them the witnesses for the prosecution as well as those for the defense, and in the discharge of their full duty, and in exercising their authority, must have determined that the witnesses for the prosecution were more worthy of credit, and by their verdict gave credit accordingly. Counsel for defendant relies largely upon our opinion in *Piel v. People,* 52 Colo. 1, 119 Pac. 687, wherein our court examined the evidence and reached the conclusion that there was

insufficient evidence to sustain a conviction for premeditated murder and, having reached this conclusion, we reversed the judgment. In the opinion in the Piel case there is language which might justify one in assuming that we held that the trial judge is a *super thirteenth juror* vested with the power and authority of determining whether the jury has reached a proper verdict upon conflicting evidence; also there is language in the opinion which might be construed as vesting a trial judge with authority as a final arbiter in testing the credibility of the witnesses and the weight of the testimony, but we do not so construe it. We do, however, believe that it is limited by that portion thereof quoted from the opinion of Mr. Justice Brewer in the civil case of *K. P. Ry. Co. v. Kunkel,* 17 Kan. 145, 172, wherein that eminent jurist, later to become a member of the United States Supreme Court, said: "We do not mean that he [the trial judge] is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when *his judgment* tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

The trial judge, at the time of the hearing on the motion in arrest of judgment and for a new trial, had in mind all of the evidence introduced in the trial; he saw and heard the witnesses as they testified, and in that respect had the same opportunity as the jury; he determined the admissibility of all of the evidence and no

error is assigned as to any of his rulings thereon; and at the conclusion of the prosecution's evidence as well as at the time of the hearing on the motion for new trial, he assented to the jury's verdict. We, too, have read and studied the record. and are in agreement with the trial court that the verdict of the jury should not be disturbed.

In the trial of criminal, as well as civil, cases, where factual questions are presented for determination, the jury does not act in an advisory capacity, but its verdicts are impressed with finality, and if a trial judge is empowered to set aside verdicts because he would have returned a different verdict than that reached by the jury, it would in fact make him a *super thirteenth juror,* and under such circumstances our jury system might well be abolished. A trial court is not vested with authority to set aside jury verdicts where there is competent evidence to support them. *Lowe v. People,* 76 Colo. 603, 234 Pac. 169; *Bowen v. People,* 87 Colo. 38, 284 Pac. 779; *McLinden v. People,* 105 Colo. 102, 96 P. (2d) 10; *Wymer v. People,* 114 Colo. 43, 160 P. (2d) 987; *Molton v. People,* 118 Colo. 147, 193 P. (2d) 271.

The record here considered, we find that the trial court did not err in denying defendant's motion for a directed verdict or in the denial of his motion in arrest of judgment and for a new trial.

2. When the information was filed, the second count thereof, omitting formal parts, charged that, "Sinclair St. Louis on the 26th day of December in the year of our Lord one thousand nine hundred and forty-seven at the said county of Moffat did then and there kill and slay one Ira Larson * * *." Upon arraignment the defendant pleaded not guilty to all counts in the information. Subsequently, and on the day of the trial, defendant filed motions to quash the second and third counts in the information, and before determining these motions, the court permitted the withdrawal of the plea of not guilty to the second and third counts of the informa-

tion. Thereupon argument on the motions proceeded and the district attorney was permitted to amend the second count of the information so that the same might read, omitting formal parts, that: "Said Sinclair St. Louis on the 26th day of December in the year of our Lord one thousand nine hundred and forty-seven at the said county of Moffat did then and there *unlawfully* kill and slay one Ira Larson * * *." The court thereupon denied both motions, and then suggested defendant's rearraignment, to which counsel for defendant replied: "I don't believe the rearraignment is necessary, and in that case we will, in answer to the original arraignment, enter a plea of not guilty to the second and third counts of the information." This statement of counsel we construe as equivalent to the formal statement that defendant being present in court waives the reading of the information and enters a plea of not guilty thereto. No prejudicial error was committed in permitting the district attorney to amend the information. *Collins v. People,* 69 Colo. 353, 195 Pac. 525.

The action of the trial court in permitting the amendment is urged as error, and attention is directed to our decision in *Mahany v. People,* 31 Colo. 365, 73 Pac. 26, in which defendant was charged with murder, and the jury returned its verdict finding him guilty of manslaughter. In that case we held that the verdict was a nullity because the jury failed to designate the offense of which defendant was found guilty as voluntary or involuntary manslaughter as is required under the provisions of section 37, chapter 48, '35 C.S.A. Here the situation is entirely different because, under the instructions of the court, to none of which any objection was made, the jury was specifically limited by the court to a verdict for involuntary manslaughter. We call attention to a portion of instruction number 2: "Under the Laws of the State of Colorado, involuntary manslaughter consists in the killing of a human being without any intent so to do, in the commission of an unlawful act or a lawful

act that might probably produce such consequence, in an unlawful manner. *It is on this statute that the second count in the information is based.*" (Emphasis supplied) By this instruction the court withdrew from the jury's consideration the question of voluntary manslaughter and submitted only the question of guilt of involuntary manslaughter. The failure of the trial court to submit for the jury's determination the question of voluntary manslaughter, if error, is one of which defendant cannot complain. The crime of voluntary manslaughter was not within the issues of this case submitted to the jury.

■ The jury, on conflicting evidence, found defendant guilty of the crimes of causing a death when operating a motor vehicle while under the influence of intoxicating liquor; and of involuntary manslaughter and reckless driving. There was competent, material and relevant evidence to support the verdicts, and, under the law, neither the trial court nor this court should disturb them.

Counsel now appearing for defendant did not represent him at the trial of the cause, but all the questions here for determination have been ably presented, and a careful examination of the record prompts the statement that defendant's plight is not due to any lack of preparation on the part of present counsel or of counsel in the trial court.

Accordingly, the judgments are affirmed.

MR. CHIEF JUSTICE HILLIARD not participating.