The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Daniel A. RAMOS, Defendant-Appellee.

The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Daniel A. RAMOS, Defendant-Appellant.

Nos. 83SA272, 83SA517.

Supreme Court of Colorado,
En Banc.

Nov. 12, 1985.

Rehearing Denied in 83SA272
Dec. 9, 1985.

**1348**

Dennis E. Faulk, Dist. Atty., Jeffrey F. Manning, Steven B. Rich, Deputy Dist. Attys., Canon City, for plaintiff-appellant in No. 83SA272.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Patricia Wallace, Eric Perryman, Asst. Attys. Gen., Denver, for plaintiff-appellee in No. 83SA517.

David F. Vela, State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for Daniel Ramos.

ROVIRA, Justice.

This case is a consolidation of appeals resulting from a 1983 criminal trial held in the district court for Fremont County. The jury found the defendant, Daniel A. Ramos, guilty of criminal attempt to commit extreme indifference murder, second-degree assault, menacing, and mandatory sentencing for a crime of violence. Following the verdict, the trial judge granted defendant's motion for judgment of acquit-tal on the count of attempted extreme indifference murder. The People appeal that judgment.[1] Prior to trial, defendant's motion to disqualify the trial judge was denied. The defendant appeals that denial.

We hold that the jury verdict of guilty on the count of attempted extreme indifference murder was proper and therefore reverse the judgment of acquittal by the trial court. We also conclude that defendant's motion to disqualify was legally insufficient and affirm the trial court's denial of that motion.

I.

The charges against the defendant stem from a disturbance at the Fremont Correctional Facility in Canon City, Colorado, on September 6, 1982. At about 12:30 p.m., a fight broke out in the facility yard between two inmates, Apodaca and Cabral. While the disturbance was in progress, correctional officer Orr, who was inside a cell house, attempted to close and lock the cell house door in order to seal off the cell block. Cabral made his way to the door, forced it open, and pushed Orr back from the door. Cabral began fighting with the guard, and the two of them ended up wrestling on the floor. Officer Orr then felt a sharp pain at the back of his head and turned and saw defendant Ramos holding a ball peen hammer. Orr and Cabral became disengaged, and Cabral, apparently trying to get Orr to lock himself inside the cell block so as to make Orr a hostage, began yelling at Orr to lock the door. Ramos then began to yell as well, demanding that Orr lock the door, and hitting Orr twice more with the hammer. After additional verbal demands, Orr got to his feet, went to the door and, instead of locking it, pulled it open. The defendant again struck Orr's head with a hammer, and Cabral shoved the door shut. The blows to his head caused Orr to fall to one knee and begin to bleed. Orr testified that, after stumbling to his feet, the de-

---

**1.** This appeal was filed directly with this court pursuant to C.A.R. 4(b)(2), and § 16–12–102, 8 C.R.S. (1978) (appeal by the prosecution in a criminal case).

fendant threatened to kill him if he did not lock the door by the count of five. Orr agreed to lock the door. As Orr fumbled with the keys, Cabral urged the defendant to kill Orr. Orr then put the keys in the slot, but instead of locking the door, he opened it a second time. Ramos then hit Orr on the head two more times, and Orr fell through the doorway. At that point, Orr managed to get to his feet and run to the control center. As a result of his injuries, Orr received stitches in two separate areas of his head, had large lumps on the head, was bedridden for two days, missed a week's work, and still suffers from headaches.

The defendant was charged with one count of attempted first-degree murder, sections 18–3–102(1)(d) and 18–2–101, 8 C.R.S. (1978), along with one count of first-degree assault, two counts of second-degree assault, two counts of felony menacing, and two counts of mandatory sentencing for crimes of violence.[2]

Prior to trial, defendant's counsel, relying on the procedure set forth in *People v. Schultheis*, 638 P.2d 8 (Colo.1981), filed a motion to withdraw, claiming that the lawyer-client relationship had deteriorated to the point where he was unable to give effective aid to the defendant. At the same time, defense counsel also filed a motion to disqualify the trial judge on the theory that the judge who heard the *Schultheis* motion could not preside over the case without creating an appearance of impropriety. Following a hearing to determine whether there was a reasonable basis for believing that the lawyer-client relationship had deteriorated to the point alleged, the motion to withdraw was denied. After questioning defense counsel during the hearing on the motion to disqualify, which was also denied, the trial court stated that "what [defense counsel] *may* be talking

about ... is a true *Schultheis* situation," where it was the defendant's intention "to present perjured testimony of one or more witnesses other than himself." (emphasis supplied).

Following a defense motion for a change of venue, the trial location was changed to El Paso County and trial was held in March, 1983. After the close of the prosecution's case, the court granted a defense motion for a judgment of acquittal on the count of first-degree assault and one of the counts of mandatory sentencing for a crime of violence. The court also amended the other count of mandatory sentencing. The remaining charges eventually went to the jury, which returned verdicts of guilty on all except one of the felony menacing counts.

Subsequently a hearing was held on defense motions for a new trial and for a judgment of acquittal. The trial court denied the motion for a new trial but granted the defense motion for a judgment of acquittal on the attempted extreme indifference murder charge and dismissed it.

II.

The People contend that the ruling of the trial court granting the motion of judgment of acquittal was erroneous, and that the jury verdict of guilty should be reinstated. We agree.

The issue before the trial judge in passing upon a motion for judgment of acquittal is whether the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466 (1973) (motion for judgment of acquittal at close of the prosecution's case

---

**2.** The attempted first-degree (extreme indifference) murder charge and one of the second degree assault charges stem from the incident with Officer Orr. The remaining charges arose from other incidents connected with the September 6, 1982 disturbance and are not at issue in this appeal.

and again at the close of all of the evidence); *People v. Gennings*, 196 Colo. 208, 210, 583 P.2d 908 (1978) (*Bennett* standard applied to reverse a judgment of acquittal notwithstanding the jury's verdict of guilty); *People v. Linn*, 194 Colo. 258, 571 P.2d 1093 (1977) (judgment of acquittal following guilty verdict reversed). In applying the *Bennett* test, the court must consider whether the evidence is sufficient to support a finding that defendant's conduct satisfied each element of the crime for which he is charged.

The crime of extreme indifference murder, on the date of the offense in question, required that: (1) under circumstances evidencing an attitude of universal malice manifesting an extreme indifference to human life generally; (2) the defendant "knowingly" engages in conduct which creates a "grave risk of death" to a person other than the defendant; and (3) thereby causes the death of another. Section 18–3–102(1)(d), 8 C.R.S. (1984 Supp.). The crime of attempted extreme indifference murder required, in addition to the first two elements above, conduct by the actor which constitutes a "substantial step" towards the completed crime of extreme indifference murder. Section 18–2–101(1), 8 C.R.S. (1978) (Criminal Attempt). In *People v. Castro*, 657 P.2d 932 (1983), we held that the substantial step required for a conviction of attempted extreme indifference murder is "conduct which poses a real and proximate risk of death to the victim." 657 P.2d at 941.

The trial court based its grant of the motion for acquittal on its belief that defendant's conduct did not constitute the necessary substantial step towards completion of an extreme indifference murder. Relying on the fact that "there was no serious bodily injury as to Mr. Orr," it concluded that there was no evidence "supportive of the proposition that there was a real and proximate risk of death."

■ We believe that the trial court misapplied *Castro* by solely looking to the extent of the victim's injuries, rather than by also considering the nature of the defendant's conduct. The fact that Orr escaped without life-threatening or serious injuries in no way alters the fact that repeated hammer blows to the head pose a real and proximate risk of death to the recipient. It does not require extensive medical training to recognize that, under circumstances such as these, a ball peen hammer can be a lethal weapon. Nor is it necessary to recount the numerous cases appearing in our courts in which blows to the head administered with a blunt instrument resulted in the death of a victim. The evidence of defendant's purposeful, forceful, and repeated hammer blows to Orr's head is sufficient evidence to support a conclusion that defendant's conduct posed a real and proximate threat to Orr's life. Where there is competent, material, and relevant evidence to support a verdict, neither the trial court nor the appellate court should disturb the verdict. *People v. Linn*, 194 Colo. 258, 571 P.2d 1093 (1977); *St. Louis v. People*, 120 Colo. 345, 209 P.2d 538 (1949). We are satisfied that a reasonable jury could find that the defendant's conduct constituted a substantial step towards the crime of extreme indifference murder. In consequence, we hold that the grant of defendant's motion for judgment of acquittal was unwarranted.

### III.

Defendant, in his appeal, contends that the trial court erred in denying his motion for disqualification. He argues that the trial court, by expressing on the record a conclusion that the defendant wished to present false alibi witnesses, created an appearance of bias sufficient to mandate recusal. Further, that the trial court violated the safeguards of *People v. Schultheis*, 638 P.2d 8 (Colo.1981), by questioning defense counsel. We disagree.

■ To be legally sufficient, a motion for disqualification and accompanying affi-

davits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that would prevent him from dealing fairly with the defendant. *People v. Botham*, 629 P.2d 589 (Colo.1981) (judge disqualified for prejudicial out-of-court statements made prior to trial); *Carr v. Barnes*, 196 Colo. 70, 580 P.2d 803 (1978) (motion to disqualify held to be factually insufficient); *People v. District Court*, 192 Colo. 503, 560 P.2d 828 (1977) (judge disqualified from presiding where he was under investigation in a related matter). In *Smith v. District Court*, 629 P.2d 1055, 1056 (Colo.1981), the court noted that:

> The test of the legal sufficiency of the motion to disqualify a judge is whether the motion and affidavit state facts "from which it may reasonably be inferred that the respondent judge has a bias or prejudice that will in all probability prevent him or her from dealing fairly with the petitioner." *Carr v. Barnes*, 196 Colo. 70, 72, 580 P.2d 803, 804 (1978).... Unless a reasonable person could infer that the judge would in all probability be prejudiced against the petitioner, the judge's duty is to sit on the case. *Walker v. People*, [126 Colo. 135, 248 P.2d 287 (1952) ].

■ We do not believe that a reasonable person could infer prejudice under the circumstances here. Contrary to defendant's assertion, the trial judge never stated that he believed defendant insisted on introducing perjured alibi testimony. He merely acknowledged that the disagreement between defendant and counsel may have constituted a "true *Schultheis* situation," and that he would so assume for the purposes of ruling on the motion for recusal. Since the trial judge must assume the truth of facts in an affidavit accompanying a motion to disqualify, *People v. Botham, People v. District Court*, this assumption was both appropriate and necessary under the circumstances.

■ The defendant concedes that the trial judge could hear this case without actual bias or prejudice. Defendant therefore does not allege actual prejudice, but bases his claim for recusal solely upon the appearance thereof. He contends that the judge's assumption that defendant demanded the introduction of perjured testimony created an irrefutable appearance of bias. In so arguing, he fails to recognize the significance of the fact that what the trial judge learned was learned while acting in his judicial capacity. As we stated in *Smith v. District Court:*

> Prejudice must be distinguished from the sort of personal opinions that as a matter of course arise during a judge's hearing of a cause. The general rule of law is that what a judge learns in his judicial capacity is a proper basis for judicial observations, and that the use of such information is not the kind of matter that results in disqualification. *United States v. Patrick*, 542 F.2d 381 (7th Cir.1976); *United States v. Bernstein*, 533 F.2d 775 (2d Cir.1976); *Davis v. Bd. of School Commissioners*, 517 F.2d 1044 (5th Cir.1975); *United States v. Sclafani*, 487 F.2d 245 (2d Cir.1973), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973).

629 P.2d at 1057. *See also United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

■ Where, as here, a motion to disqualify is based upon information that the trial judge learns in the performance of his judicial duties, and where defendant recognizes that there is no actual prejudice on the part of the trial judge, the trial judge may properly conclude that there are insufficient grounds to grant a motion for disqualification. As the trial court recognized, under these circumstances the rule in *Smith v. District Court* controls.

We also reject defendant's argument that *People v. Schultheis*, 638 P.2d 8 (Colo. 1981), mandates recusal in this case. In *Schultheis*, court appointed defense counsel sought to withdraw on the grounds that his client wanted to subpoena alibi witnesses who would testify that the defendant was not present when the victim was murdered. In asking for permission to withdraw, the lawyer stated to the court that he "refused to affirmatively put on evidence that [he knew] was fabricated." 638 P.2d at 10. In criticizing the procedure used by the trial court, we stated that:

> [T]he defendant is always entitled to an impartial trial judge, untainted by accusations that the defendant had insisted upon presenting fabricated testimony. Therefore, we hold that defense counsel, in a motion to withdraw, should never be required to cite the specific provisions of the Code of Professional Responsibility which prohibit the use of perjured testimony or false evidence.

638 P.2d at 13.

The trial judge here did not violate the prohibition that we set down in *Schultheis*. Counsel did not accuse his client of insisting on fabricated testimony. The court merely assumed the existence of such a demand for purposes of ruling on the motions for withdrawal and disqualification. The court did not ask counsel to cite the specific provisions of the Code of Professional Responsibility that counsel believed mandated withdrawal. Thus, the situation we disapproved of in *Schultheis* is not present here.

Nor does *Schultheis* mandate recusal of a trial judge even where defense counsel states that his client wants to introduce false alibi testimony. Indeed, in *Schultheis* we sustained defendant's conviction under precisely those circumstances. The issue of whether such knowledge created an irrefutable bias in the trial judge was never raised. Defendant misreads *Schultheis* when he asserts that it overrules *Smith v. District Court* and mandates the disqualification of the trial judge.

We also note, as did the trial court, that this case was tried before a jury. Where, as here, the jury was the ultimate finder of fact, a trial judge's opinion as to the defendant's guilt or innocence does not taint the verdict, so long as the judge neither expresses that opinion before the jury nor otherwise improperly acts upon that opinion within the hearing of the jury. Since the defendant does not allege that the judge acted improperly in any proceeding before the jury, we do not believe that any preconceptions that the trial judge may have formed could have had any effect on the jury verdict. *See Schultheis*, 638 P.2d at 14.

In concluding that the trial court's denial of the motion to disqualify was proper, we also note the danger inherent in adopting the rule proposed by defendant. As the trial court recognized:

> There are too many things that will come up in the course of a criminal case that the trial judge learns about for the trial judge to be disqualifying himself on the basis of anything that might be said or might happen that would in the least degree be prejudicial to the defendant.

*See also In re Linahan*, 138 F.2d 650, 651 (2d Cir.1943) ("If ... 'bias' and 'partiality' be defined to mean the total absence of preconceptions in the mind of the trial judge, then no one has ever had a fair trial and no one ever will."). *See generally* 46 Am.Jur.2d, *Judges* § 170 (1969). We find merit in the Fifth Circuit's cogent observation in *United States v. Harris*, 458 F.2d 670, 678 (5th Cir.1972):

> Our judicial system does not provide for no-deposit/no-return judges, disposable after one use. An accused cannot be allowed to find himself immune from the law simply because he has run through every judge within his venue, and "used" judges must simply be recycled.

If we were to hold that a trial judge must recuse himself on the basis of information learned in his judicial capacity, an unscrupulous defendant could manipulate such a

ruling to his advantage, and infinitely delay his trial by forcing the removal of successive trial judges.

Accordingly, in 83SA272, judgment of acquittal is reversed, and the case is remanded with directions to reinstate the jury verdict, enter a judgment on that verdict, and sentence the defendant on his conviction of attempted extreme indifference murder. In 83SA517, we affirm the denial of defendant's motion to disqualify the trial judge.

LOHR, J., specially concurs.

NEIGHBORS, J., joins in the special concurrence.

LOHR, Justice, specially concurring:

I agree with the majority that the prosecution presented sufficient evidence so that a jury could find that the defendant's conduct constituted a substantial step towards commission of the crime of extreme indifference murder, in accordance with the requirements of the substantial step element of the crime of attempted extreme indifference murder as analyzed in *People v. Castro*, 657 P.2d 932, 941 (Colo.1983). I write separately only to emphasize that this appeal presents a narrow issue of the sufficiency of the evidence to satisfy the substantial step element of the crime. Not presented as issues by the parties, and thus properly not addressed in the majority opinion, are matters concerning the constitutionality and construction of the statute and the sufficiency of the evidence to satisfy other elements of the crime. My reason for emphasizing the issues not involved in this appeal is that complex questions concerning the validity, construction and application of the statute exist. In resolving this case, we are not called upon to answer those questions and should not be understood to take a position concerning them.

First, the parties have not presented an issue as to the constitutionality of the current extreme indifference murder statute, section 18–3–102(1)(d), 8 C.R.S. (1985 Supp.). In *People v. Marcy*, 628 P.2d 69 (Colo.1981), we held that an earlier version of that statute was unconstitutional as a violation of equal protection of the laws because there was no legally significant distinction between first degree murder by extreme indifference and the lesser offense of second degree murder. The extreme indifference murder statute was amended to its present form in 1981 after the issuance of our opinion in *People v. Marcy*. Ch. 212, section 4, § 18–3–102(1)(d), 1981 Colo.Sess. Laws 972, 973. It appears likely that the amendment represents an attempt by the legislature to cure the constitutional problems exposed in *People v. Marcy*. We have never analyzed the constitutionality of the 1981 revision of the statute. However, we are not called upon to address that issue in the present case as the defendant did not challenge the constitutionality of the extreme indifference murder statute.

Second, this appeal does not present an issue as to the proper construction and application of the requirement in the present statute that the circumstances surrounding the actor's conduct must evidence an attitude of "universal malice." In the 1981 amendment, among other changes, the legislature added the concept of "universal malice" to the definition of the crime of extreme indifference murder. We have not analyzed the meaning of "universal malice" in the context of this current version of the statute. We have stated before that "[u]niversal malice is evinced by acts which are 'calculated to put the lives of many persons in jeopardy without being aimed at anyone in particular.'" *People v. Jones*, 193 Colo. 250, 254 n. 5, 565 P.2d 1333, 1336 n. 5 (1977), quoting from *Longinotti v. People*, 46 Colo. 173, 177, 102 P. 165, 167 (1909). In *People v. Jones*, which involved a review of a conviction for extreme indifference murder under a prior version of the present statute, we held that the evidence was sufficient to support the conviction even though the defendant's conduct was directed towards a single person. We concluded that the extreme indifference

murder statute as it was then constituted prohibited conduct that greatly endangered only a single person because the statute proscribed "conduct which creates a grave risk of death to *a person*." 193 Colo. at 254, 565 P.2d at 1336 (emphasis in the original). We implicitly rejected an argument that universal malice was a required element of the crime. However, the statute has now been amended to incorporate explicitly a "universal malice" requirement. This raises the obvious question whether a person still can be convicted of an offense under the statute if his conduct and intent are directed only towards a particular person. Again, however, the parties did not raise that issue before the district court or on appeal.

Finally, in this appeal the parties have not questioned the sufficiency of the evidence to establish that Ramos had the necessary mental state at the time the alleged offense took place. As noted in the majority opinion, one element of the crime of attempted extreme indifference murder requires conduct by the actor that constitutes a substantial step towards the commission of the completed crime of extreme indifference murder. In *People v. Castro*, we characterized the substantial step requirement of attempted extreme indifference murder as "conduct which poses a real and proximate risk of death to the victim." 657 P.2d at 941. In granting the defendant's motion for judgment of acquittal in the present case, the district court concluded that the evidence was not sufficient for a jury to conclude that Ramos' conduct posed a real and proximate risk of death to Orr. The majority properly sets aside this ruling for the reasons given.

However, another element of the crime of attempted extreme indifference murder describes, in part, the culpable mental state required for the commission of the offense. This element requires that the defendant "knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself." § 18–3–

102(1)(d), 8 C.R.S. (1985 Supp.). In *People v. Marcy*, we held that the culpable mental state described by the statute required an awareness on the part of the offender that his actions were "practically certain to cause the death of another." 628 P.2d at 78, 79. *Accord People v. Castro*, 657 P.2d at 940 (attempted extreme indifference murder). Conduct "practically certain to cause death"—part of the *mens rea* requirement—is not the same as, and is a higher standard than, conduct that creates "a real and proximate risk of death"—an integral part of the substantial step element. However, the parties have not raised an issue as to the sufficiency of the evidence to satisfy this *mens rea* requirement. The majority properly avoids these questions.

I concur in the opinion of the court, with the understanding that it quite correctly does not resolve any issues concerning the validity or construction of the extreme indifference murder statute except the one specifically addressed.

I am authorized to say that Justice NEIGHBORS joins this special concurrence.