The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Michael Nelson MILLIGAN, Defendant-Appellant.

No. 84CA1117.

Colorado Court of Appeals, Div. I.

Nov. 20, 1986.

Rehearing Denied Dec. 18, 1986.

Certiorari Denied (Milligan) March 30, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

CRISWELL, Judge.

Defendant, Michael Milligan, urges three grounds of error in appealing a judgment of conviction of second degree burglary. We affirm.

## I.

 Shortly before the hearing on defendant's motion to postpone his trial, the victim and the prosecutor met with the trial judge without the presence of the defendant or his counsel. At this meeting, which lasted only a few minutes, the judge and the victim apparently discussed the need for and length of any trial postponement. On the same day, the trial court granted the continuance requested by defendant.

Based upon this *ex parte* conference, a motion to recuse was filed by defendant, supported by affidavits which generally described this meeting. Defendant asserted that this conference between the victim and the judge would necessarily affect the judge's assessment of the victim's credibility and, in any event, had resulted in an appearance of bias or prejudice. At the hearing on this motion, the trial judge accepted the factual allegations of the affidavits as true, as he was required to do by *People v. Botham*, 629 P.2d 589 (Colo. 1981).

The trial judge opined that, because of his meeting with the victim and the prosecutor, if he were to sit as a trier of the facts, he would be required to recuse himself. Moreover, he recognized that a pending motion alleging prosecutorial misconduct, which was based in part upon the same *ex parte* meeting, might involve testimony from the victim and the resolution of factual controversies, and accordingly, he referred it to another judge. However, because the judge considered that a jury would decide all other issues of fact presented during the trial and that he would be resolving only issues of law, he ruled that there was no necessity for his further recusal.

Defendant contends that, given the appearance of bias or prejudice which resulted from the judge's *ex parte* communications with the victim and the prosecutor, he was required to recuse himself from the entire case. Under the circumstances of this record, we disagree.

We recognize that some previous decisions of the supreme court would seem to suggest that, if there is any appearance of bias, prejudice, or other impropriety, a trial judge must recuse himself from passing upon any phase of the case, regardless of whether an issue of fact or an issue of law is involved. *See Beckord v. District Court*, 698 P.2d 1323 (Colo.1985); *Johnson v. District Court*, 674 P.2d 952 (Colo.1984).

In our view, however, defendant's claim here is governed by the supreme court's more recent opinion in *People v. Ramos*, 708 P.2d 1347 (Colo.1985). In *Ramos*, it was said that:

> "Where, as here, the jury was the ultimate finder of fact, a trial judge's opinion as to the defendant's guilt or innocence does not taint the verdict, so long as the judge neither expresses that opinion before the jury nor otherwise improperly acts upon that opinion within the hearing of the jury."

*See also James v. People*, 727 P.2d 850 (1986) (allegation of prejudice in motion to disqualify was limited to sentencing process; defendant made no claim that judge would be unable to preside fairly at trial).

Here, there is no claim that the trial judge was actually prejudiced against defendant. The only claim was that there was an appearance of prejudice, which resulted from the judge's meeting with the victim.

Further, there is no claim that any opinion the judge may have had upon the defendant's guilt or innocence was expressed before the jury or that the record contains any other evidence that the judge acted in any improper manner. Under such circumstances, the jury's verdict is not tainted, and defendant suffered no prejudice from the judge's refusal to recuse himself. *See People v. Ramos, supra; Robran v. People ex rel. Smith*, 173 Colo. 378, 479 P.2d 976 (1971).

## II.

Defendant also argues that dismissal of the charge should have been granted, or some lesser sanction imposed, because the prosecution failed to preserve latent fingerprints which were potentially exculpatory. We disagree.

The record indicates that fifteen latent prints were taken from the crime scene. Eight prints were determined to have value for comparison purposes. These were retained and found not to be those of the defendant. The remaining seven prints were destroyed because the police department's latent print examiner determined they were physically incapable of being compared with any others. This opinion was confirmed by another latent print examiner from the department before the prints were destroyed. In destroying the prints, the examiner was following department guidelines in effect at the time.

■ Since the record establishes that these latent prints had no exculpatory value that was apparent before their destruction, there was no federal constitutional error in the prosecution's failure to retain them. *See California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *People v. Gann,* 724 P.2d 1318 (Colo.1986).

Further, even if we assume, arguendo, that the due process provisions of Colo. Const. art. II, § 25, require the adoption of a test different from the test formulated by *Trombetta, supra,* a sanction would still not be warranted. Even under such separate test, the defendant would have to demonstrate a reasonable possibility that evidence lost or destroyed by the prosecution could have been of assistance to the defense. *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979).

Defendant here made no such demonstration. Unlike the situations in *Morgan* and *Garcia,* for example, there was no testimony that the prints would have had some value, either exculpatory or inculpatory, if preserved. Rather, the only testimony in the record was that the destroyed prints were useless for comparison purposes. The defendant's claim as to their potential exculpatory value is purely speculative.

### III.

Finally, defendant argues that evidence seized from his residence and vehicle should have been suppressed because trial testimony by an investigating officer proved that the same officer had made a material misrepresentation in the affidavit supporting his application for search warrants. However, the record simply does not support defendant's assertion in this respect.

Fairly read, the officer's trial testimony was that the victim identified undergarments recovered from defendant's work vehicle as hers, even though they had no special identifying marks on them upon which she could base such identification. This testimony does not necessarily conflict with the affidavit statement that the victim had "positively identified" the undergarments. Furthermore, the victim testified at trial that she had identified the undergarments when she first viewed them—testimony which underscores the accuracy of the officer's affidavit that was based upon the victim's initial identification.

The judgment of conviction is affirmed.

PIERCE and TURSI, JJ., concur.