2014 CO 13

**Tyler N. LEPAGE, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 11SC235**

Supreme Court of Colorado.

February 24, 2014

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, James S. Hardy, Deputy Public Defender, Denver, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we consider whether the court of appeals correctly applied the presumption of regularity when it determined that the jury did not receive the correct verdict forms. The transcript here shows that the trial judge read the jury the correct elemental instructions and verdict forms, from which it can be inferred that the jury received the correct verdict forms. When the record was certified on appeal, however, one of the verdict forms was stapled to a refused jury instruction that was not given to the jury, raising the inference that the jury may not have received the correct verdict forms. Therefore, inconsistent inferences can be drawn from the record.

¶ 2 We hold that where the trial court read the correct elemental instructions and verdict form in question to the jury, LePage has not overcome the presumption of regularity by pointing to the order and stapling of the verdict forms in the record and ambiguous statements in the trial transcript. Thus, LePage failed to show that the jury did not receive the correct verdict forms. While the court of appeals affirmed the trial court's judgment because it held that failure to give the jury the verdict form for the lesser included offense is not reversible error, we affirm the trial court's judgment because LePage did not show that the trial court erred. Therefore, we affirm the court of appeals on other grounds and remand the case to that court to be returned to the trial court for further proceedings consistent with this opinion.

## I. Facts and Proceedings Below

¶ 3 Petitioner Tyler N. LePage was serving a life sentence at a correctional facility when he was charged with second degree assault for injuring two correctional officers. His case proceeded to a jury trial.

¶ 4 During a conference regarding the jury instructions and verdict forms, LePage asked the trial court to instruct the jury about the lesser included offense of obstruction of a peace officer and third degree assault. The trial judge refused the third degree assault instruction but agreed to instruct the jury about the lesser included offense [1] of obstruction of a peace officer in addition to second degree assault. As the judge compiled the jury instructions, the prosecutor offered to "run downstairs and get a verdict form for the obstruction." The judge refused the offer, stating: "I'm not going to do the verdict forms and things. They don't need to have those—they will take them with them to the jury room, but they don't need them while I read through them." Thus, it appears that the judge did not compile the verdict forms at the same time as he compiled the jury instructions.

¶ 5 After compiling the jury instructions, the judge brought the jurors into the courtroom and instructed them. Initially, prior to closing arguments, the judge read the packet of jury instructions to the jury, which included the elemental instructions for second degree assault and the lesser included offense of obstruction of a peace officer. Then, following closing arguments, the judge read the verdict forms for second degree assault and obstruction of a peace officer to the jury. As to the verdict form for obstruction of a peace officer, the judge read the verdict form verbatim:

> Jury Verdict Count 3. Obstruction of a peace officer. Roman Numeral I. We, the jury, find the defendant, Tyler N. LePage, not guilty of Count 3, obstruction of a peace officer. Roman Number [sic] II. We, the jury, find the defendant, Tyler N. LePage, guilty of Count 3, obstruction of a peace officer.

The judge also instructed the jury foreperson to sign the verdict form that reflects the jury's verdict and to return the other form unmarked. Neither party objected to the manner in which the judge instructed the jury.

¶ 6 After the judge gave the instructions, he swore in the bailiff and stated, "I'll go ahead and give you the original verdicts and the exhibits." The bailiff then escorted the jury to the jury room where the jury began deliberating.

¶ 7 During its deliberations, the jury asked the court only one question: whether it could view the video of the alleged assault again. At no point did the jury inquire about the jury instructions or verdict forms or otherwise indicate any confusion regarding the verdict forms.

¶ 8 When the jury informed the bailiff that it had reached a verdict, the judge brought the jury back into the courtroom and read aloud the jury's verdict. The jury had found LePage guilty of second degree assault, and the foreperson had signed the second degree assault verdict form and left the other verdict form blank. On LePage's request, the court polled the jury by asking each juror whether s/he voted for the guilty verdict. Each juror affirmatively stated that s/he had voted for the guilty verdict for the second degree assault charge. The jury made no other comments. Again, neither party questioned whether the jury received the correct verdict forms.

¶ 9 LePage appealed. For the appeal, a clerk compiled and certified the record. The certified record contains an index that the clerk of the court created, followed by the original documents. The relevant portion of the record contains four entries. The index labels for these entries, in the order that they appear in the index, are:

- Jury Instructions—Defendants [sic] Proposed—Refused

- Jury Instructions Used

---

1. The court of appeals has held that obstruction of a peace officer is a lesser included offense of second degree assault. *See People v. Stafford,* 890 P.2d 244, 247–48 (Colo.App.1994).

- Jury Verdict Count Two, Assault in the Second Degree—Guilty [2]
- Jury Verdict Count Three, Assault in the Third Degree—Unsigned

The clerk filed one or more documents under each label. Pertinent here, filed under the "Jury Instructions—Defendants [sic] Proposed—Refused" index label are two documents that are stapled together: the jury instruction for third degree assault and an unmarked jury verdict form for "Count Three, Obstruction of a Peace Officer." The verdict form for second degree assault is filed separately and is labeled: "Jury Verdict Count Two, Assault in the Second Degree—Guilty." The verdict form for third degree assault, which the trial judge refused, is also filed in a separate section and labeled in a similar manner as the verdict form for second degree assault: "Jury Verdict Count Three, Assault in the Third Degree—Unsigned."

¶ 10 The clerk transferred the certified record to the court of appeals. After reviewing the filed record, LePage argued to the court of appeals that, based on the order of the documents in the record and the fact that the verdict form for obstruction of a peace officer is stapled to the refused jury instruction for third degree assault, the jury never received the verdict form for obstruction of a peace officer. LePage argued that this omission required reversal of his conviction.

¶ 11 The court of appeals affirmed the judgment of conviction. *People v. LePage,* —— P.3d ——, ——, No. 09CA0676, 2011 WL 544019, at *1 (Colo.App. Feb. 17, 2011). The court of appeals stated that it must review the record as submitted and assume that it reflects what occurred at trial. *Id.* at ——, 2011 WL 544019 at *2. It placed the burden on the People to affirmatively show otherwise. *Id.* The court of appeals concluded,

based on the certified record, that the jury did not receive the verdict form for obstruction of a peace officer. *Id.* The court of appeals then held, however, that omission of this verdict form did not amount to reversible error. *Id.* at ——, 2011 WL 544019 at *7.

¶ 12 We granted certiorari to determine whether the trial court's failure to give the jury a verdict form for the lesser included offense required by the evidence is reversible error. We now affirm on other grounds.[3]

## II. Standard of Review

¶ 13 Appellate courts defer to a trial court's factual findings as long as they are supported by the record. *Page v. Clark,* 197 Colo. 306, 312–13, 592 P.2d 792, 796 (1979). Whether there are sufficient facts to support a claim, however, is a question of law that we review de novo. *See People v. Elmarr,* 181 P.3d 1157, 1161 (Colo.2008). Here, the trial court has not made any factual findings as to whether it gave the jury the correct verdict forms. Therefore, we must review the record de novo to decide whether LePage has overcome the presumption of regularity.

## III. Analysis

¶ 14 We start by reviewing the presumption of regularity. We then determine whether LePage has overcome the presumption of regularity by evaluating LePage's assertion that the trial court erred based on the record and the transcript.[4]

### A. Presumption of Regularity

¶ 15 According to the presumption of regularity, appellate courts presume that the trial judge did not commit error absent affirmative evidence otherwise. *Nelson v. Centennial Cas. Co.,* 130 Colo. 66, 72, 273

2. The trial court dismissed count one prior to closing arguments and did not re-number the counts. As a result, the trial court only gave the jury verdict forms for counts two and three.

3. Specifically, we granted certiorari to consider "[w]hether the court of appeals erred in finding no reversible error where the trial court failed to give the jury the verdict form for the lesser included offense required by the evidence." Because the record does not establish that the trial

court failed to give the jury the verdict form for the lesser included offense, we do not reach this issue.

4. While the court of appeals determined that the trial court erred solely based on the certified record, LePage argues here that both the certified record and the trial transcript establish that the trial court erred.

P.2d 121, 123 (1954); *see also Kallnbach v. People*, 125 Colo. 144, 145, 242 P.2d 222, 224 (1952) (noting that courts presume that the defendant "had a fair and impartial trial before a competent court" (quoting *St. Louis v. People*, 120 Colo. 345, 347, 209 P.2d 538, 539 (1949))). This presumption is "deeply rooted" in our judicial system, *Parke v. Raley*, 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), for several reasons. Applying this presumption serves the public's interest in finality of judgments. *Bute v. Illinois*, 333 U.S. 640, 672, 68 S.Ct. 763, 92 L.Ed. 986 (1948) ("[G]overnmental stability depends upon the giving of full faith and credit in form, substance and spirit to public acts, records and judicial proceedings .... "); *see also Voorhees v. Jackson, ex dem. Bank of U.S.*, 35 U.S. 449, 472–73, 10 Pet. 449, 9 L.Ed. 490 (1836) (stating that "every act of a court of competent jurisdiction shall be presumed to have been rightly done" in part because individuals should be able to rely on the judicial process). And, as a practical matter, the presumption of regularity is necessary because an appellate court cannot intelligently review an alleged error if the circumstances in which it supposedly occurred cannot clearly be discerned from the record. *See Hinshaw v. Dyer*, 166 Colo. 394, 396, 443 P.2d 992, 993 (1968) (stating that where the transcript is "unintelligible ... we are simply unable to come to grips with the issues now sought to be raised by the plaintiff in error"). Finally, the presumption accords respect to judicial officers who have taken oaths to lawfully discharge their responsibilities and uphold the law. *Bute*, 333 U.S. at 671–72, 68 S.Ct. 763.

¶ 16 The effect of this presumption is that the party asserting error must affirmatively show that it occurred. *Schuster v. Zwicker*, 659 P.2d 687, 690 (Colo.1983) ("It is the obligation of the party asserting error in a judgment to present a record that discloses that error, for a judgment is presumed to be correct until the contrary affirmatively appears."); *Nelson*, 130 Colo. at 72, 273 P.2d at 123 ("That error may have been committed by the trial court is never presumed, but must affirmatively be made to appear."). When determining whether the party asserting error has met its burden, reviewing courts must review and consider the entire record and "apply the evidence so as to support the judgment." *Kallnbach*, 125 Colo. at 146, 242 P.2d at 224 (quoting *St. Louis*, 120 Colo. at 347, 209 P.2d at 539). If conflicting inferences can be drawn from the record, the party asserting error has not overcome the presumption of regularity. *See Union Brewing Co. v. Cooper*, 15 Colo.App. 65, 67, 60 P. 946, 947 (1900) (presuming that the trial court did not err where it can be inferred that the trial court either did or did not err); *cf. Benster v. Bell*, 83 Colo. 587, 591, 267 P. 792, 794 (1928) (finding that the presumption of regularity was not overcome when the defendant failed to present an alternative purpose, other than efficient administration of court business, for the trial court's denial of the defendant's motion for a continuance).

## B. Review of the Record

¶ 17 To support his argument that the trial court erred, LePage relies on both the order of the certified record and statements in the transcript. LePage argues that the jury did not receive the verdict form for obstruction of a peace officer because, in the certified record, this verdict form does not follow the guilty verdict for second degree assault, but is instead stapled to the jury instruction for third degree assault, which the trial court did not tender to the jury. In addition, the verdict form for second degree assault is filed separately and is labeled: "Jury Verdict Count Two, Assault in the Second Degree—Guilty." The verdict form for third degree assault, which the trial judge refused, is also filed in a separate section and labeled in a similar manner as the verdict form for second degree assault: "Jury Verdict Count Three, Assault in the Third Degree—Unsigned." According to LePage, based on this evidence, this Court should conclude that the jury did not receive the verdict form for obstruction of a peace officer and instead received the verdict form for third degree assault.

¶ 18 In arguing that the certified record establishes that the trial court erred, LePage relies on *People v. Seacrist*, 874 P.2d 438 (Colo.App.1993), for the proposition that ap-

pellate courts can conclude, merely from the order of the documents in the record, that error occurred during trial. In *Seacrist*, the defendant requested certain mental health records, in response to which the trial court first conducted an *in camera* inspection of the mental health records. *Id.* at 442. The trial court entered an order defining which topics addressed in the documents should be provided to the defendant and divided the documents into two piles on this basis. *Id.* The trial court gave one set of documents to the defendant. *Id.* The trial court did not read the documents it provided to the defendant into the record. *See id.* After trial, the defendant reviewed the certified record and appealed to the court of appeals, arguing that, based on the terms of the trial court's order, the trial court did not give the defendant all of the relevant documents. *Id.* The court of appeals found that the record clearly established which documents the trial court furnished to the defendant and which it did not. *Id.* Because there was no evidence to the contrary of the defendant's argument that the trial court did not give the defendant all of the documents that it should have, the defendant overcame the presumption of regularity, and the burden shifted to the prosecution. *See id.* LePage argues that this Court should adopt *Seacrist*'s rationale and find that, based on the record, the trial court erred.

¶ 19 LePage further asserts that the error demonstrated in the certified record is confirmed by two sections of the trial transcript. The first section of the transcript that Le-Page points to is an interaction between the prosecutor and the trial judge during the jury instruction conference. As the trial court compiled the jury instructions, the prosecutor offered to "run downstairs and get a verdict form for the obstruction." The court then stated, "I'm not going to do the verdict forms and things. They don't need to have those—they will take them with them to the jury room, but they don't need them while I read through them." LePage argues that, based on this evidence, the trial court never compiled the correct set of verdict forms.

¶ 20 LePage also points to another statement in the transcript that the trial judge made. After reading the verdict forms to the jury, the trial judge stated to the bailiff, "Thank you. I'll go ahead and give you the original verdicts and the exhibits." LePage argues that the fact that the judge said he was giving the "original" verdict forms to the bailiff indicates that the judge read a different set of verdict forms from those that he gave to the bailiff. From this, LePage infers that while the judge read the correct verdict forms to the jury, the jury did not actually receive the verdict form for the lesser included offense.

¶ 21 In evaluating LePage's arguments, we cannot consider parts of the record in isolation. Rather, we must review the entire record as a whole and apply the evidence to support the judgment. *Kallnbach*, 125 Colo. at 146, 242 P.2d at 224. Our review of the transcript shows that during the conference regarding jury instructions, LePage requested that the judge instruct the jury on the offense of obstruction of a peace officer, as a lesser included offense of second degree assault. The judge agreed and put together a packet of jury instructions that included an instruction on obstruction of a peace officer. Prior to closing arguments by counsel, the judge read the compiled set of instructions, which included the elemental instruction for second degree assault. The judge also instructed the jury that if it did not find Le-Page guilty of second degree assault, it could consider the lesser included offense of obstruction of a peace officer. The judge then read the elemental instruction for obstruction of a peace officer to the jury. After closing arguments, the judge read the verdict forms for second degree assault and obstruction of a peace officer to the jury verbatim. The judge then immediately handed the verdict forms to the bailiff, saying, "I'll go ahead and give you the original verdicts and the exhibits," and the bailiff escorted the jury to the jury room. During deliberations, the jury sent out a written, unrelated question to the judge. At no point, however, did the jury inquire about the jury instructions or verdict forms. The jury returned with a guilty verdict for the second degree assault charge. Because the jury found the defendant guilty

of second degree assault, the foreperson did not sign the other verdict form, as instructed.

¶ 22 We presume the regularity of these proceedings, and LePage has not affirmatively demonstrated that the trial court erred. LePage argues that we should infer from the record that the jury received the verdict form for third degree assault instead of obstruction of a peace officer. Yet, because the judge had the correct verdict form in front of him, which he read verbatim to the jury, and never instructed the jury regarding third degree assault, LePage's arguments are insufficient to overcome the presumption of regularity.

¶ 23 We note that LePage's reliance on *Seacrist* is misplaced. In *Seacrist*, aside from the certified record, there was no evidence as to what documents the trial court provided to the defendant, conflicting or otherwise. 874 P.2d at 442. By contrast, in this case, there is compelling evidence that the jury received the correct verdict forms. Namely, the judge read the correct verdict forms to the jury verbatim. Thus, *Seacrist* is not relevant to the factual scenario present here and, in any event, that decision is not binding on this Court.

¶ 24 While LePage's argument that the trial court erred based on the order of the record is insufficient to overcome the presumption of regularity, there is a dispute as to whether the record reflects what happened at trial. The trial court should have been asked to resolve the dispute. C.A.R. 10(e) ("If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth."); *see also People v. Ray*, 302 P.3d 289, 294–95 (Colo.App.2012) (where it is unclear whether the trial court made certain comments to the jury, the trial court should determine, pursuant to C.A.R. 10(e), whether it delivered such comments).

## IV. Conclusion

¶ 25 The presumption of regularity dictates that appellate courts should presume that the trial judge did not commit error absent affirmative evidence to the contrary. We hold

that where the trial court read the correct elemental instructions and verdict form in question to the jury, LePage has not overcome the presumption of regularity by pointing to the order and stapling of the verdict forms in the record and ambiguous statements in the trial transcript. Thus, LePage failed to show that the jury did not receive the correct verdict forms. For the foregoing reasons, we affirm the court of appeals on other grounds and remand the case to that court to be returned to the trial court for further proceedings consistent with this opinion.