25CA0927 Peo in Interest of Feyintola 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0927
Pueblo County District Court No. 25MH30043
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Gbenga Dipo Feyintola,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary E. Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Gbenga Dipo Feyintola appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him.  We affirm.

## I.     Background

¶ 2     Feyintola was admitted to the hospital after being found incompetent to stand trial in a criminal case.  A staff psychiatrist diagnosed him with an unspecified mood disorder.  Although he was initially restored to competency and discharged without medication treatment, he was readmitted to the hospital in December 2024, where he has remained since.  Since being readmitted to the hospital, Feyintola has exhibited a pattern of refusing oral medications and solid foods, acting aggressively toward others, and being placed on assault precautions.

¶ 3     In May 2025, the People filed a petition seeking authorization to involuntarily medicate Feyintola with olanzapine (Zyprexa) and lithium.  Consistent with *People v. Medina*, 705 P.2d 961 (Colo. 1985), the petition asserted that (1) Feyintola is incapable of effectively participating in decisions affecting his treatment; (2) the requested treatment is necessary to prevent a significant and likely long-term deterioration in his mental health condition and to

prevent the likelihood of him causing serious harm to others in the institution; (3) a less intrusive treatment alternative is not available; and (4) Feyintola's need for treatment is sufficiently compelling to override any bona fide and legitimate interest he has in refusing treatment.

¶ 4 The district court held a hearing, at which both Feyintola and the psychiatrist supervising his treatment testified.

¶ 5 The psychiatrist testified that the acute symptoms of Feyintola's mood disorder include pressured speech, disorganization, paranoia, delusions, and agitation. Feyintola was prescribed olanzapine and lithium on an emergency basis after threatening another hospital patient.

¶ 6 The psychiatrist explained that olanzapine is an antipsychotic medication used to treat delusions, paranoia, and acute agitation, and lithium is a mood stabilizing medication that can improve symptoms like pressured speech and thought disorganization. Both medications may have side effects that medical staff monitor for by "ask[ing] the patients if they are experiencing side effects and observ[ing] them on the unit."

¶ 7      The psychiatrist said that after taking both emergency medications, Feyintola started showing signs of improvement, such as eating solid foods more regularly and demonstrating more logical thinking.  He also said Feyintola's mood-disorder-related symptoms have historically worsened when he is not adequately medicated, and he opined that "[w]ithout the medications Mr. Feyintola will continue to suffer from the symptoms of his mental illness which will place him at increased risk of danger to himself and others. With the medications, these symptoms can improve and Mr. Feyintola can more appropriately care of himself."

¶ 8      Much of Feyintola's testimony focused on describing the side effects he claimed to have experienced while taking the emergency medications.  The psychiatrist acknowledged that Feyintola reported experiencing various side effects while taking the emergency medications.  However, the psychiatrist noted that while neither he nor other medical staff had observed some of the side effects Feyintola reported experiencing, they would continue to monitor Feyintola for adverse side effects and attempt to mitigate them with appropriate medication management.

¶ 9    At the conclusion of the hearing, the district court granted the petition.

## II.    Discussion

¶ 10    A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four elements outlined in *Medina*. *Id.* at 973. Feyintola doesn't contest the first, second, or third *Medina* elements. He contends only that the evidence presented at the hearing was insufficient to prove the fourth *Medina* element. We aren't persuaded.

### A.    Standard of Review

¶ 11    When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo and defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the People as the petitioning party. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. As the fact finder, the district court determines the sufficiency,

4

probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7.

## B.  Analysis

¶ 12    The fourth *Medina* element evaluates whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment. *Medina*, 705 P.2d at 974. In conducting this evaluation, a court determines — to the extent permitted by the evidence — whether the patient's refusal is "bona fide and legitimate" and, if so, whether the patient's prognosis without treatment is "so unfavorable that [his] personal preference must yield to the legitimate interests of the [S]tate in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 13    Feyintola agrees the district court acknowledged that his reasons for refusing medication — avoiding adverse side effects — "might be bona fide." *See Uwayezuk*, ¶ 62 (a desire to avoid adverse effects can constitute a bona fide and legitimate reason to refuse medication). However, he does not present any specific argument regarding the court's balancing of his interests against the State's. Instead, he merely asserts — in conclusory fashion — that the court

5

"erred in finding that his interests were outweighed by those of the State."

¶ 14     Reviewing the record as a whole and in the light most favorable to the People, we conclude that sufficient evidence supports the conclusion that Feyintola's need for treatment outweighs his interest in refusing it.  The psychiatrist's testimony establishes that (1) the risk of adverse side effects from the requested medications is treatable; (2) "objectively, [Feyintola] tolerate[s] the medications well"; (3) without treatment, Feyintola will continue to suffer from the symptoms of his mental illness, and will be at increased risk of danger to himself and others; and (4) Feyintola's need for the requested medications outweighs his interest in refusing them.  We conclude that this evidence clearly and convincingly supports the court's determination that Feyintola's interest in refusing medication must yield to the State's interests in preserving his health and protecting his safety and the safety of those in the hospital.  *See Medina*, 705 P.2d at 974.

¶ 15     We note that the hearing transcript is incomplete, presumably because the device recording the proceedings stopped doing so before the hearing concluded.  Feyintola does not assert that the

missing portion of the hearing contains evidence requiring reversal. Nor has he sought to settle the record. *See* C.A.R. 10(g)(1) ("If any difference arises as to whether the record truly discloses what occurred in the trial court or a portion of the record is not in the possession of the trial court, the difference must be submitted to and settled by the trial court. The party moving to settle the record must file a motion to stay the appellate court proceedings in the appellate court while the trial court considers the motion to settle the record."). "Where the record is silent the law presumes regularity." *People in Interest of I.S.*, 2017 COA 155, ¶ 11 (quoting *McClain v. People*, 141 P.2d 685, 686 (Colo. 1943)); *LePage v. People*, 2014 CO 13, ¶ 15 ("According to the presumption of regularity, appellate courts presume that the trial judge did not commit error absent affirmative evidence otherwise."). Thus, absent evidence to the contrary, we presume that the missing portion of the transcript would show that district court did not err.

## III. Disposition

¶ 16     The order authorizing the involuntary administration of medication is affirmed.

JUDGE J. JONES and JUDGE KUHN concur.